THOS. T. HOWARD ET AL. V. M. KOPPERL ET AL.

No. 5934.

1. **Testimony.**—Where parties claimed under a common source of title and plaintiff exhibited a deed from the common vendor, it is not reversible error to admit a mortgage by the said grantor to the grantee named in the deed and of date prior to the date of the deed. Such mortgage having been duly recorded it may have been pertinent as a circumstance to show notice. It being the rule that in the absence of information in the record of the purpose of the testimony, it will be presumed that the trial court had legal reason for its ruling in admitting the testimony upon some issue made on the trial.

2. **Sales of Lands Under the Bankrupt Law.**—Sales of land under the bankrupt law of 1867 were legally made in Texas according to the provisions of said law. The sales are not controlled by the laws of the State as to the time, manner, and place of sale.

3. **Declarations of Parties to a Deed.**—It was not error to exclude testimony by the grantor as to her physical and mental condition at the signing by her of a deed when offered against a remote vendee, the witness having already testified that the deed was in fact to secure a debt though in form an absolute deed.

4. **Fining a Party While Testifying.**—It not appearing that a party suffered injury to his case from his having been fined by the trial court for contempt while being examined as a witness, the act of the judge in imposing such fine upon the losing party, who when testifying "was almost uncontrollable and would pay no attention to the questions of counsel nor admonitions of the court," will not be revised.

5. **Amending Verdict.**—It is within the power of the trial judge to recall the

jury in a civil case that they may amend the verdict. The original plaintiff having died the amendment consisted in omitting his name as plaintiff in the corrected verdict.

6. **Conditional Sale.**—Two instruments bore the same date, one in form a deed by Mrs. Hunt to L. W. Groce, reciting a money consideration, the other a bond executed by Groce to Mrs. Hunt reciting that the deed was executed by her and received by him in payment of an antecedent debt, and the bond was in the sum of $20,000, conditioned that he should reconvey the land to her upon payment by her to him of the sum of $1028.45. The money never was repaid. *Held*, that it was not error in the court to instruct the jury that the conveyance to Groce was prima facie a conditional deed, but leaving to the jury to determine it to be a mortgage if the entire testimony showed that such was the understanding and intention of the parties at its execution.

7. **Notice—Conflict in Testimony.**—There being a conflict in the testimony as to the fact of notice on part of the defendant at his purchase, and the court having charged the jury more favorably to defendant than the law required on that subject, the case will not be reversed upon the testimony. The verdict is not without testimony.

8. **Notice.**—What facts will amount to notice sufficient to put a purchaser upon inquiry will depend upon the circumstances of each case.

APPEAL from Bell.   Tried below before Hon. W. A. Blackburn.
The opinion states the case.

*Wharton Branch, Geo. W. Tyler,* and *W. L. Davidson,* for appellants. The court erred in instructing the jury in the sixth paragraph of his charge that the instruments of December 18, 1856, together constituted a conditional sale, the only question of fact as to this for the jury being whether under all the circumstances said instruments constituted a mortgage or not, and it should have been submitted to them without any questions of law being intermixed therewith.

It was the province of a jury, under proper instructions from the court, to determine whether these two instruments constituted a conditional sale or a mortgage, and if there were any doubt as to whether it were a conditional sale or a mortgage the construction should have been in favor of a mortgage.   Howard v. Kopperl and Howard v. Spofford, Manuscript Opinions Supreme Court; 2 Johns. Ch., 189; 15 Johns., 555; 2 Greene, 152; 12 Mass., 456; 8 Pick., 157; 6 Watts, 405; 3 Watts, 198; 3 Wend., 208; — Add., 357; 3 Fairf., 346; 7 Wend., 248; 2 Bouv., "Mortgage," sec. 5.

*X. B. Saunders,* for appellees.

ACKER, PRESIDING JUDGE.—This suit was brought by M. Kopperl in 1879 against Thos. T. Howard, Peter G. Rucker, J. F. Mannahan, H. C. Hall, M. C. Hall, and J. H. Hall, in trespass to try title to two surveys of land in Bell County, one containing 640 acres, the other 320 acres, both patented to M. Hunt in November, 1850.

Both parties deraign title under M. Hunt, the plaintiff by the following chain:

1.   Mortgage from M. Hunt and Ann T. Hunt, his wife, to L. W. Groce, of date August 30, 1850, to secure the payment of $700, recorded in Falls County April 9, 1855, and in Bell County October 28, 1876.

2.   Deed from Ann T. Hunt to L. W. Groce in satisfaction of a judgment for $1028.45 in District Court of Galveston County, deed of date December 18, 1856, recorded in Falls County September 7, 1858, and in Bell County August 30, 1876.   M. Hunt died in June, 1856.

3.   Order of United States Court for Eastern District of Texas dated April 16, 1868, adjudging L. W. Groce a bankrupt.

4.   Certified copy of assignment by Stancel, register, to A. R. Campbell, assignee of the estate of L. W. Groce, dated May 26, 1868, recorded in Bell County May 26, 1879.

5.   Petition of A. R. Campbell, assignee, for order of sale, and order of sale made September 23, 1868, directing said assignee to sell the lands in controversy before the court house door of Galveston on the 27th day of October, 1868.

6.   Report of Campbell, assignee, showing the sale of the lands in compliance with the directions given in the order of sale, and that M. Kopperl purchased the lands.

7.   Deed from Campbell, assignee, to M. Kopperl, dated October 29, 1868, recorded in Falls County June 4, 1869, and in Bell County May 26, 1879.

8.   Deed of gift from M. Hunt to Ann T. Howard in consideration of marriage, dated February 4, 1850, recorded in Milam County June 18, 1850, and in Bell county November 26, 1875.   This deed conveyed about 15,000 acres of land in Texas, including the lands in controversy.

Defendants answered by plea of not guilty; statutes of three, five and ten years limitation; and specially that the deed from Ann T. Hunt to L. W. Groce, dated December 18, 1856, was a mortgage, now barred; that defendant Howard purchased the land in controversy from Ann T. Lipscomb, formerly Hunt, and received a deed therefor on December 14, 1875, in good faith for value and without notice of any adverse claim.

On the trial the defendants introduced in evidence the following chain of title:

1.   Deed of gift from M. Hunt to Ann T. Howard (same introduced by plaintiff).

2.   Bond of L. W. Groce to Ann T. Howard in the sum of $20,000, containing the following recitations:  "The consideration of the above bond is such that whereas the said Ann T. Howard has this day conveyed by deed to said Groce three tracts of land situated in Falls County, Texas, containing in all 2067 acres, for the sum of $1028.45, which was the amount due at the date of this bond, including cost of suit, upon a judg-

ment rendered in favor of Groce and against said Hunt and said Ann T. Hunt in the District Court of Galveston County, at the June Term, 1856, and which is in full payment of said judgment and costs, and the privilege was reserved by and given to said Ann T. Hunt to pay back to said Groce the sum of $1028.45, with interest at the rate of eight per cent per annum, at any time within two years from the date of said deed, upon which payment said Groce was to reconvey said land to said Ann T. Hunt: Now if at any time within two years from the date of this instrument said Ann T. Hunt shall pay to said Groce said sum of money with interest as above stated, and upon such payment said Groce shall convey to her said land, then the above bond to be null and void; otherwise, if said payment is made or tendered, and said Groce shall refuse thereon to convey said land, then this bond to remain in full force and virtue." This bond is dated December 18, 1856, and was not recorded.

3.   Deed from Ann T. Lipscomb to defendant Howard dated December 1, 1875, recorded in Bell County February 8, 1876, purporting to convey "in consideration of $6000 cash in hand" to the vendee, his heirs and assigns forever, the vendor's "entire interest in and to a deed of gift" from said M. Hunt to her, bearing date the 14th of February, 1850, and concludes with the following warranty: "I bind myself, my heirs," etc., "to warrant and defend the title to said interests unto him the said Howward and his heirs and assigns forever."

4.   Power of attorney and deed from Howard to Peter G. Rucker for one-fourth interest in the lands in controversy, of date February 8, 1876, recorded same day.

5.   Release from Geo. E. Burney to M. Hunt for his locative interest in the lands.

The land in controversy is situated in territory that was taken from Falls County and attached to Bell County by Act of the Legislature of August 30, 1856.   The line was surveyed in 1857.   Ann T. Howard, whose first husband was Hunt, afterwards married Lipscomb, then Womack, and was at the time of the trial the wife of E. Jones.   She is a sister of defendant Howard.   Pending the suit the death of plaintiff Kopperl was suggested and his legal representatives, Isabella Kopperl and Isadore Dyer, were made parties.   The case was tried by jury December 29, 1885, and a verdict returned on evening of that day "in favor plaintiff M. Kopperl" and the jury discharged by the court until next morning, when the jury was called together by the court at suggestion of plaintiff's attorney and their attention called to so much of the charge as informed them of the death of M. Kopperl and the substitution of his legal representatives as plaintiffs.   The court directed the jury to retire and consider further of their verdict, which they did and returned into court a verdict "in favor of plaintiff."   Judgment was rendered for plaintiffs,

and defendants' motion for new trial being overruled defendants Howard and Rucker appealed.

During the trial the judge presiding assessed a fine of $25 againt defendant Howard while he was testifying as a witness in his own behalf.

Defendants took the following exceptions, which were saved by proper bills:

1.   To the ruling of the court in admitting in evidence a copy of the mortgage from M. Hunt and wife to L. W. Groce, "to which defendants objected on the ground that the debt secured by the same was barred and that it constituted no link on plaintiff's title."

2.   To the ruling of the court in admitting in evidence the deed from Ann T. Hunt to Groce, dated December 18, 1850, to which defendants objected on the ground "that it had not been recorded in Bell County prior to the recording of the deed from Ann T. Lipscomb to defendant Howard."

3.   To the ruling of the court in admitting in evidence the report of Campbell, assignee of Groce, "showing sale of the land, and that said sale was made by said assignee at the United States court house door in Galveston;" and also the ruling admitting in evidence the deed from said assignee to M. Kopperl, both of which were objected to by defendants on the ground "that said sale was shown by the report not to have been made under any decree of court directing the time and place and manner of sale, and not made at the time and place and in the manner required by the statutes of Texas."

4.   To the ruling of the court in admitting the testimony of A. J. Harris, witness for plaintiffs, in regard to a conversation had by him with defendant Howard in relation to the Hunt lands in Falls and Bell counties, owned by Ann T. Lipscomb in 1871, the conversation having occurred "some time between the latter part of 1874 and the spring of 1876," and at which time he exhibited to said Howard a letter from Dr. A. S. Lipscomb dated March 25, 1871, with map attached showing lands in two counties that had been disposed of during the life of M. Hunt, which letter and map, being identified by the witness as the same exhibited to defendant Howard at the time of the conversation referred to, were offered and admitted in evidence, all of which was objected to by the defendants on the grounds:

(1)   The execution of the papers was not proved.

(2)   Because not signed by any person under whom either party claims.

(3)   Because the time when shown to Howard was not fixed positively before the time when Howard bought the land.

(4)   The memorandum on margin of the map showed that the writer had given the same upon information as platted by one Alexander.

(5)   The memorandum showed that "all these Hunt tracts in Bell and Falls counties once belonged to my wife" (meaning Mrs. Ann T.

Hunt), "but were all except four disposed of in the lifetime of Hunt," only put Howard on inquiry as to what was done in the lifetime of Hunt.

5. To the ruling of the court in sustaining plaintiffs' objections to and excluding a portion of the testimony of Ann T. Jones, vendor of Howard, offered by defendants.

6. To the action of the court in assessing a fine against defendant Howard while on the witness stand.

7. To the action of the court in calling the jury together in the morning, after they had returned a verdict and had been discharged the night before, and receiving from them a second verdict.

Appellants assign these rulings as grounds of error, and also complain of the charge of the court and of refusal of the court to give instructions asked.

The purpose for which plaintiffs offered in evidence the mortgage from Hunt and wife to Groce does not appear from the record. Defendants had the right to require plaintiffs to state the purpose for which it was offered, and it was their duty to have done so and to incorporate the purpose stated in their bill of exception with the grounds of their objection to the instrument, that this court might pass understandingly upon the question of its admissibility. Was it offered as a link in the plaintiffs' chain of title? Was it offered to explain the origin of the transactions between Hunt and wife with Groce, which culminated in the execution of the two instruments—one by Groce and the other by Mrs. Hunt on December 18, 1856—or was it offered as a circumstance tending to charge defendants with notice, or was it offered for some other purpose?

In the absence of information upon the question we must presume that the trial court had legal reasons for its ruling. If the instrument was offered as a link in plaintiffs' chain of title, defendants' objections were well taken and should have been sustained. While the ruling is probably technical error, still as it does not appear that it prejudiced the rights of the defendants we think it is not such error as requires reversal of the judgment. We think there was no error in the ruling of the court in admitting the deed from Ann T. Hunt to Groce. Plaintiffs had the right under the directions of the court to offer their evidence in the order preferred.

The register in bankruptcy was a judicial officer, a part of the court charged with the administration of the bankrupt law of 1867, and both he and the assignee of a bankrupt's estate are controlled in their official acts by the directions and requirements of that law. The assignee has the same right, power, and authority to sell and dispose of the property of the bankrupt's estate as the bankrupt had if no assignment had been made. The court, acting by the judge, or register where there is no controversy, may direct the time, place, and manner of sale of the property of the bankrupt's estate. And such proceedings are not controlled by

the statute laws of Texas.    Bump., 10 ed., secs. 123, 167, 168; Morris
v. Swartz, 10 N. B. R., 305; Mims'v. Swartz, 37 Texas, 13.

One of the important questions in this case was, did defendant How-
ard at the time he purchased the land from his sister have notice, actual
or constructive, that the land had been previously disposed of by his
vendor? He had testified that he had no notice. The deed under which
plaintiffs claim through Howard's vendor had not been recorded in the
proper county at the time Howard placed his deed upon record.    Mrs.
Jones (Lipscomb) had testified that at the time the letter and plat were
sent by Dr. A. S. Lipscomb to Leach, Holman & Rucker, Lipscomb was
her husband and attended to her business.    Howard had testified that
he had no recollection of the conversation with Harris, and denied hav-
ing seen the letter and attached map from Lipscomb.    He had also tes-
tified that Womack, his vendor's then husband, died in 1875.    His deed
from Mrs. Lipscomb was dated December 14, 1875.    If Womack died in
September, 1875, and Harris's testimony is true, it is certain that the
·conversation testified to by Harris occurred several months before How-
ard bought the land.    We think the court did not err in admitting the
testimony of the witness Harris, together with the letter and map sent
by Dr. Lipscomb.    They were admissible as tending to charge defendant
Howard with notice of the previous conveyance by his vendor.

We do not think the court erred in sustaining plaintiff's objection to
and in excluding a portion of the testimony of Mrs. Ann T. Jones.    The
excluded testimony relates entirely to the conversation between herself and
Groce at the time the two instruments of December 18, 1856, were exe-
cuted, and to the representations and promises then made to her by
Groce.    She testified in that portion which went to the jury that Groce
before she signed the deed said to her in an emphatic manner that he
would give her two years, twenty years, her lifetime, to pay the debt
which was originally contracted by Hunt; that he said this many times
before and after she signed the instrument; that she never received any
valuable consideration for signing it.    Groce was very emphatic and im-
pressive at the time in his manner—when he promised to give her two
years, twenty years, etc., to pay the debt.    At the time she was suffering
much and was not in a condition to attend to business, and was at that
time ignorant of all business knowledge; that she had never seen the
original since she was induced to sign it; that she does not remember
any one signing the instrument as a witness; that she has no recollection
of making any acknowledgment of the instrument before an officer; that
she has claimed the lands all the time, for she thought they were only
mortgaged.    The instrument about which the witness testified appears
to be an absolute deed duly acknowledged.    She was permitted to testify
that she was induced to sign the deed believing it to be a mortgage.    We
do not think the ruling of the court excluding a part of the testimony

of the same witness to the same effect as that admitted is such error as requires reversal.

It appears from the explanation of the trial judge endorsed upon the bill of exceptions taken by appellants to the action of the court in imposing a fine upon defendant Howard that the witness was almost uncontrolable, would pay no attention to the questions of counsel or admonitions from the court. It does not appear that this action of the court prejudiced the rights or interests of the defendants, and in absence of such showing this court will not in any case revise the action of the trial court in imposing penalties for contempt. Jordan v. State, 14 Texas, 436, Crow v. State, 24 Texas, 14.

There is no error in the action of the court directing the jury to correct the verdict. The name "M. Kopperl" might have been treated as surplusage, and judgment entered upon the first verdict. Cook v. De la Garza, 9 Texas, 561; Thomae v. Zushlag, 25 Texas Supp., 227; Gaines v. Bank, 64 Texas, 18.

The sixth assignment of error is as follows: "The court erred in refusing to give the jury the several instructions asked by defendants' counsel." Upon inspection of the record it appears that the special instructions asked by defendants contain six paragraphs relating to at least two distinct defenses. This assignment is too general to be entitled to any consideration. Railway v. Leak, 64 Texas, 665.

The seventh, ninth, and tenth assignments of error relate to the charge of the court. It is insisted:

1. That the court erred in the sixth paragraph of the charge in instructing the jury that the two instruments of December 18, 1856, considered together constitute a conditional sale.

2. That the court erred in the tenth paragraph of the charge in instructing the jury to find for the plaintiffs if they find Howard not to be an innocent purchaser, thus withdrawing from their consideration the question whether the two instruments of December 18, 1856, constitute a mortgage.

3. The court erred in instructing the jury to find for the plaintiffs under any circumstances, and should have instructed the jury to find for the defendants.

The court charged the jury as follows:

"6. There are two instruments from Ann T. Hunt to L. W. Groce before you, dated December 18, 1856, one of them from Ann T. Hunt to L. W. Groce, and the other a bond or agreement to reconvey to Ann T. Hunt, and signed by L. W. Groce. These two instruments must be construed together, and being so construed they constitute a conditional sale vesting the title in said Grace, but subject to be defeated by the said Mrs. Hunt paying the said Groce the sum agreed upon in said agreement to reconvey within the time therein stipulated. But while these papers

upon their face show a conditional sale, still if all the evidence intro-
duced in this case reasonably satisfies you that the said instruments were
intended by the parties at the time they executed the same as a mortgage
to secure a pre-existing debt, and was not intended as a conditional sale,
then if you so believe you will find for defendants and so say by your ver-
dict.

" 7.  If you are not satisfied from the evidence that said instruments.
were intended by the parties at the time they executed the same as a
mortgage, then you will find for the plaintiffs and so say in your verdict,
unless you are also satisfied from the evidence that defendants are inno-
cent purchasers in good faith for a valuable consideration, which they
paid."

The court did not err in construing these instruments a conditional sale,
and leaving this construction to be defeated by "all the evidence intro-
duced upon the trial" to be considered by the jury in determining the
question of fact as to what the real intention of the parties to the instru-
ments was at the time they executed them.   The bond from Groce re-
cites that the deed from Mrs. Hunt was executed by her and received by
him "in payment" of the judgment obtained by him against Hunt and
wife.   This was an extinguishment of the debt.

It satisfactorily appears that Groce was living in 1868, and was dead
at the trial.   Mrs. Hunt held his obligation in the sum of $20,000 to re-
convey the land to her upon payment by her to him "at any time within
two years" from the date of the bond the sum of $1028.45.   It does not.
appear that she ever paid the money or took any steps to compel Groce
to reconvey the land.   These instruments were involved in the suit of
Rucker v. Spofford (decided by this court and reported in 4 Texas Law
Rev., 114), and were there decided to constitute prima facie a condi-
tional sale.   The charge here complained of does no more.   After in-
structing the jury that they constitute a conditional sale, the court leaves.
the question as to whether the parties thereto intended them as such, or
as a mortgage, to the decision of the jury.   While the courts are inclined,
and it is probably their duty, to construe such transactions to constitute
a mortgage, yet where it manifestly appears from the instruments that
the debt was extinguished thereby it is not error for the court to con-
strue the instruments to constitute a conditional sale, and leave the ques-
tion of fact as to the understanding and intention of the parties at the
time the instruments were executed to the determination of the jury.
Walker v. McDonald, 49 Texas, 462.

Upon the question of notice the court charged: "Although the proof
may satisfy you that the legal title was vested in plaintiffs on the 14th of
December, 1875 (date of sale to Howard), yet if you are further satisfied
from the evidence that said Howard at the time of said purchase had no
notice of plaintiffs' adverse claim to said land, and that in ignorance of

any such claim he fully paid a lawful consideration therefor, then you will find for the defendants.   (9) There are two kinds of notice, and if a party has either he is not an innocent purchaser.   One kind of notice is actual, the other constructive.   Notice is actual when a party knows that some person has an adverse title to the land he is purchasing.   When a deed is recorded in the proper office in the county in which the land is situated it (the record) is constructive notice to all persons that the land is claimed by the person named as vendee in the record; but the record of the deed in another county than that in which the land lies is not constructive notice of an adverse claim.   (10) Then if from the evidence that defendants purchased the land in good faith and paid a valuable consideration therefor without notice of the claim of plaintiffs, and could not have known of such claim by the use of ordinary diligence, then you will find for defendants.   But on the contrary, if you believe the defendants at the time of their purchase knew of plaintiffs' claim, or by the use of ordinary diligence could have known of it, then you will find for plaintiffs."

We believe the charge of the court upon the question of defendant Howard being a good faith purchaser for value and without notice is quite as favorable to defendants as the facts of the case would justify.

If there is error in the charge at all we think it is in favor of the defendants in this, that the court does not inform the jury that defendants might be charged with constructive notice upon information of such facts and circumstances as would prompt a reasonable man to make inquiry about the title he was buying.   The charge, considered as an entirety as it should be, is a reasonably fair exposition of the law applicable to the facts of the case, and we find no error therein of which appellants could justly complain.

There are two material questions of fact in this case:   (1) Are the two instruments of December 18, 1856, a mortgage, or are they a conditional sale?   (2) Was defendant Howard a good faith purchaser for a valuable consideration paid without notice of plaintiffs' claim?   The jury returned a general verdict for plaintiffs, which is a finding against defendants on both of these questions.

Appellants insist that the verdict is not supported by the evidence. Prima facie the instruments constitute a conditional sale, and must be held to be such unless evidence de hors the instruments introduced upon the trial satisfies the minds of the jury that the parties to such instruments—not one of the parties thereto, but both—understood and intended that the instruments should constitute a mortgage.   Mrs. Lipscomb-Jones testified that she intended the instruments to be a mortgage, and that at the time they were executed she understood from the declarations and promises made by Groce at the time that he would give her twenty years in which to pay the amount that the mortgage created by

the instruments was intended to secure, and yet on December 14, 1875, she sold and conveyed the land to her brother, more than a year before the twenty years expired. It appears that Groce died before the trial and could not appear and testify as to his intent and understanding, but it is somewhat remarkable if he understood the instruments to be a mortgage that he should record his deed just a short while before the expiration of two years allowed Mrs. Hunt to redeem the land, and that he continued to hold the deed, knowing it was only a mortgage, until it became barred by the statute of limitations. It is equally as remarkable that Mrs. Lipscomb should receive her brother's money for the land, which she thought was under a mortgage to secure a debt, the payment of which had been generally extended for twenty years.

Upon the question, was Howard a good faith purchaser for a valuable consideration paid without notice of plaintiff's claim? the evidence is conflicting. He testifies that he knew of the existence of the mortgage to Groce before he bought the land, but knew nothing of the deed from Mrs. Hunt to Groce. He denies having seen the letter and map from Dr. A. S. Lipscomb, dated March 25, 1871, and contradicts the witness Harris in every material particular in regard to a conversation between him and Harris, about which Harris testified as follows:

"Some time between the latter part of 1874 and the spring of 1876 I was in the office of the recorder of deeds for Bell County; the defendant Howard was present and talking to me about the M. Hunt lands in Bell and Falls counties. He asked me if I knew what lands Hunt owned in Bell County. I told him a letter and sketch sent by Dr. A. S. Lipscomb to Holman, Rucker & Leach, land agents at Belton, were in my hands, which letter and sketch showed that some of the lands had been sold. I went to my office, got the letter and sketch, and showed them to Howard. He asked my permission to take them with him to his room, promising to return them to me next morning, which he did. The letter and sketch shown to Howard when he was testifying is the same letter and sketch I showed him and which he borrowed and kept over night. They have been in my possession ever since. At the interview with Howard he showed me some kind of an instrument executed by Mrs. Lipscomb to him; do not remember whether it was a deed or power of attorney; it related to the Hunt lands. I asked him why Womack had not signed that instrument. He said Mrs. Lipscomb and Womack had separated and that Womack was a bad man. He said, 'they are going to kill him; I expect he is dead by this time.'"

Howard testified that Womack died in September, 1875, and his deed from his sister was made December 14, 1875. Mrs. Jones (his sister and grantor) testified that in 1871 Dr. Lipscomb was her husband and attended to her business as her agent. He wrote the letter and made the plat sent to Leach, Holman & Rucker, which Harris testified he had

exhibited to defendant Howard. Lipscomb stated in the letter that the map or plat of the lands was made from information furnished by Alexander, the county surveyor. If the jury believed Harris's testimony to be true, as they had a right to do, we think the facts and circumstances testified to by him support the finding against defendants on this question.

It has been repeatedly stated by this court that as to what will amount to notice sufficient to put a party upon inquiry each case must stand upon its own circumstances. These questions of fact having been fairly submitted to the jury under proper instructions from the court as to the law applicable thereto, and there being evidence to support the verdict, this court will not disturb it. Willis v. Lewis, 28 Texas, 185; Tarkinton v. Broussard, 51 Texas, 550.

We express no opinion as to the effect of the deed from Mrs. Ann T. Lipscomb to defendant Howard, as it is not necessary to the decision of the case.

We find no error in the judgment requiring reversal, and we are of opinion that the judgment below should be affirmed.

*Affirmed.*

Adopted October 25, 1887.

Chief Justice Willie did not sit in the case.