TARRANT COUNTY AGRICULTURAL, MECHANICAL, AND BLOODED STOCK ASSOCIATION V. YELLOWSTONE KIT.

No. 1857.

1. **Innocent Purchaser—Notice by Possession—Wire Fence Inclosure.—** The existence around unoccupied land of an unsubstantial wire fence, out of repair, is not such possession as to necessarily charge a purchaser with notice of an adverse claim of title, especially where such possession is consistent with the claim of his vendor, in whom the record title stands.

2. **Registration—Supplying Destroyed Record.—**Where the record of a deed was destroyed by fire in 1876, a failure to supply the record as provided by the statutes is not excused by the fact that the original deed was also destroyed at the same time, and such original record therefore ceased to have effect.

APPEAL from Tarrant.    Tried below before Hon. W. D. HARRIS.

*Hyde Jennings* and *J. B. Lewright,* for appellant.—1. The court erred in not finding that the appellee purchased the land with actual notice that appellant was the owner thereof at the time of said purchase and in actual, visible, open, and notorious possession thereof. Said land being at that time under fence, appellee had notice, or could have had by the exercise of reasonable and ordinary prudence and inquiry. Kolb v. Bankhead, 18 Texas, 228; Gunter v. Meade, 78 Texas, 634; Whitehead v. Foley, 28 Texas, 285; Cantagrel v. Von Lupen, 58 Texas, 577; League v. Stock Co. (Texas Civ. App.), 21 S. W. Rep., 307; Wade on Notice, sec. 280.

2. Where a deed or other instrument entitled to registration under the laws of Texas has been recorded and said original deed as well as the record thereof were destroyed at the same time, or said original deed was destroyed prior to the destruction of the record thereof, and neither said original deed nor the record thereof have been substituted, and more than four years may have elapsed since the destruction of said record, that said record remains in full force and effect so far as subsequent purchasers may be concerned, the same as if it had never been destroyed, in other words that the four years' limitation contained in article 4292 of the Revised Statutes applies only in cases where the original deeds may have been preserved from loss. Rev. Stats., arts.

4334–4342; Fitch v. Boyer, 51 Texas, 349; Throckmorton v. Price, 28 Texas, 605; Wade on Notice, secs. 150–157.

*R. J. Boykin,* for appellee.—1. Appellee had no actual notice of appellant's claim of title, and the possession of appellant was not of such character as to constitute notice. Borends v. Little, 76 Texas, 316; Howard v. Copperl, 74 Texas, 494; Wade on Notice, secs. 288, 291, 296.

On character of possession sufficient to constitute adverse possession under statute of limitations: Warren v. Fredericks, 83 Texas, 380; Mhoon v. Cain, 77 Texas, 316; Richardson v. Smith, 67 Texas, 610; Bracken v. Jones, 63 Texas, 186; Sellman v. Harding, 58 Texas, 86.

2. If the deed and record were destroyed in 1876, and the deed had been duly recorded or filed for record prior to said loss, and appellant had failed to supply the lost record, then such record or filing for record would not have operated as notice to appellee. Rev. Stats., arts. 4286–4293; O'Neal v. Pettus, 79 Texas, 254; Eylar v. Eylar, 60 Texas, 315; Moran v. Wheeler, 27 S. W. Rep., 55; Tolle v. Allen, 24 S. W. Rep., 113; Pom. Eq. Jur., sec. 735; Sayles' Real Estate Laws, art. 1070.

TARLTON, CHIEF JUSTICE.—In this action to try title involving seven acres of land in the corporate limits of the city of Fort Worth, the appellee, as defendant, prevailed in the court below over the appellant, a corporation, as plaintiff. The successful defense interposed was that of an innocent purchaser for value, and the correctness of the court's disposition of this issue is the sole matter to be here considered.

The plaintiff and defendant deraign title from H. G. Hendricks as a common source.

Plaintiff's chain of title may, with reference to the issue here involved, be thus set out with substantial accuracy:

1. A bond for title or executory conveyance by H. G. Hendricks to W. T. Moore, dated December 5, 1872, and recorded December 9, 1872, and again recorded March 13, 1888. This instrument evidenced unpaid purchase money.

2. A deed to plaintiff dated on or about the —— day of July, 1874, by Mrs. E. A. Hendricks, the duly qualified survivor in community of H. G. Hendricks, deceased. This deed was executed under the following circumstances: W. T. Moore having sold the land to the plaintiff, caused the execution of this instrument by Mrs. E. A. Hendricks by virtue of an agreement of all the parties, in consideration of the payment by the plaintiff to Mrs. Hendricks of the unpaid purchase money due by Moore under the terms of the instrument executed to him by H. G. Hendricks. This deed was about the date of its execution recorded in the deed records of Tarrant County. It remained in the county clerk's office until March, 1876, when, with the records of the county, it was destroyed by fire. It was never substituted, nor was it again recorded, nor was any attempt ever made to substitute its reg-

istry.    Since the destruction of the records, there has been nothing of record to show that it ever existed.

The appellee's chain of title may be thus set out with substantial accuracy.

1.    The instrument already described as executed by H. G. Hendricks to W. T. Moore, December 5, 1872.

2.    A release deed by Mrs. E. A. Hendricks, the survivor of H. G. Hendricks, to W. T. Moore, dated February 22, 1886.    This instrument was duly and promptly recorded.

3.    Conveyances prior to the institution of this suit duly and promptly recorded: (1) by W. T. Moore to S. F. Carroll; (2) by S. F. Carroll to Yellowstone Kit, the appellee.

In regard to the character of the defendant's purchase, the record justifies the following conclusions of fact found by the trial court and adopted by us:

Yellowstone Kit purchased the land from Carroll in good faith, and without notice of any defect in the title, and without notice of any claim to the same by plaintiff, and for a valuable consideration.

At the time Kit purchased the record of deeds showed a regular chain of title from the sovereignty of the soil to his vendor Carroll. There was at that time no possession being held sufficient to put him upon inquiry as to whether some other person than Carroll claimed title to the land.

In the purchase of the land the defendant took such precautions in ascertaining what kind of title he was getting as a prudent man would usually take under similar circumstances.

*Opinion.*—Appellant's first assignment of error asserts the proposition that the appellee should be held to have bought the land with actual notice of the appellant's title, because the property at the time of his purchase was under fence, and appellee could by the exercise of reasonable prudence and inquiry have ascertained the fact of the appellant's title.

Our conclusions of fact indicate that we must overrule this assignment.

What shall be the character and extent of the possession which shall in a given case be deemed sufficient in law to challenge the inquiry of a prudent person as to the particular title under which the possession is held, must depend upon the circumstances of that case.    Howard v. Copperl, 74 Texas, 505.

If, in this case, there was evidence sufficient to sustain the finding of the court that Yellowstone Kit exercised that degree of care which a person of ordinary prudence would exert under similar circumstances to ascertain where stood the true title to the land in controversy, we must affirm that finding, though there might also have been testimony justifying a contrary conclusion.

In Gunter v. Meade, 78 Texas, 639, our Supreme Court, considering a question of the character of possession as affecting the operation of the statute of limitations, uses the following language: "The evidence offered by appellants tended to show that for a part of the time necessary to complete the bar there was not such a possession as would keep the statute in operation. The credibility of the witnesses and the weight to be given to their testimony was for the determination of the judge who tried the cause, and as there was evidence to support his finding on limitation, we are not authorized to set it aside."

So, in this case, the trial court, passing upon the effect of possession in determining the issue of innocent purchaser, found in favor of the affirmative of that issue, and if there was evidence tending to show that the possession was not of such character as to affect with notice a person of ordinary prudence in the situation of the appellee, we are not at liberty to disturb that finding. The evidence relied upon by the appellee was of this character. While there was a fence about the premises from the time of the appellant's purchase in 1874, and while it had not been entirely removed, yet at the time of the appellee's purchase it was partly removed, and according to the testimony of his witnesses it was unsubstantial, and its condition such as to reasonably suggest abandonment. No one lived upon the premises. Before his purchase the appellee caused the title to be examined by an attorney, who reported upon it favorably. The record showed the title to be in the appellee's vendor. Relying upon the title thus disclosed, the defendant paid a valuable consideration, $2100, for the property.

Under these circumstances, we are unable to pronounce the conclusion of the trial judge erroneous in holding that the defendant was not chargeable with notice of the appellant's claim. The appellee was not required to ask of persons living near the land as to the ownership thereof, or as to the origin of the possession indicated by the incomplete inclosure. Bounds v. Little, 75 Texas, 320.

The fencing upon the land did not necessarily or even naturally indicate to him, in the exercise of ordinary prudence, that some one was claiming the property adversely to his vendor, in whom the record showed the title to be vested. On the contrary, it would seem that the possession thus indicated could very reasonably be referred to the person in whom stood the record title. The possession was wholly consistent with the title of the appellee's vendor, Carroll, as it appeared upon the records. Brown v. Volkenning, 64 N. Y., 82, 83, cited in Wade on Notice, sec. 291.

It will be noted that the situation of the appellee presents entirely different features from that of the defendant W. T. Moore, Jr., appellant in the cause number 1849, a companion case to the one under consideration, in which we affirmed a finding of the trial judge against the appellant Moore on a similar issue.

We have seen that in March, 1876, the registry of the deed executed by Mrs. E. A. Hendricks to the appellant was burned, and that at the

same time the original instrument was destroyed.    It is contended by the appellant that as this deed had been duly recorded in 1874, its registration operated as constructive notice to the appellee in his purchase.

It is held in the case of Fitch v. Boyer, 51 Texas, 349, that if a deed be once properly recorded, the subsequent destruction of the record, without the fault of the party claiming under it, will not impair its efficacy as notice.  The soundness of this doctrine being unquestioned, it followed that, on account of the frequent destruction of the public records, the alienation of realty would be necessarily impeded, because of the impossibility of ascertaining from the registry by a person desiring to purchase, whether, in a county where the records had once been destroyed, the person proposing to sell had not previously conveyed.    To do away with the detrimental effects of this rule, the Legislature, from motives of public policy, adopted in 1874 an act "to provide for the supplying of lost records in the several counties in this State."    This act has, in features not affecting the question here considered, been amended by subsequent provisions in 1876 and 1879.

By section 1 it is provided, that "All deeds * * * which are required or permitted by law to be recorded, and which have been so recorded * * * and which record * * * have been lost, destroyed, or carried away, may be supplied by parol proof of the contents thereof."

By section 2 it is provided, that "Any person having an interest in any such deed * * * the record * * * of which has been lost, destroyed, or carried away, may, in addition to any mode now provided by law for establishing the existence of such record and the contents thereof, apply to the district judge of the district in which such county, the records of which have been lost, destroyed, or carried away, is situated, for a citation to the grantor in such deed, or to the party or parties interested in such instrument of writing, * * * or the heirs and legal representatives of such parties, to appear at a term of the District Court, to be designated in such citation, to contest the right of the applicant to have any such deed substituted and recorded; and service shall be as now provided for process from the District Court; and on hearing said application, if the court shall be satisfied of the existence of such deed * * * (or) record * * * and of the loss, destruction, or carrying away of the same, as alleged by the applicant, and the contents thereof, an order shall be entered on the minutes of the District Court to that effect, which order shall contain a description of the lost deed * * * or record and the contents thereof, and a certified copy of such order may be recorded in the records of the county, and shall stand in the place of and have the same force and effect as the original of said lost deed * * * or record; and when duly recorded may be used in evidence in any of the courts of this State with like effect as the original thereof."

Section 4 provides, that "When any of the original papers mentioned in section 1 of this act may have been saved or preserved from

loss, the record of said original having been lost, destroyed, or carried away, the same may be recorded again, and this last registration shall have force and effect from the date of the filing for original registration, provided said originals are so recorded within five years after the passage of this act; and certified copies from any record authorized by the provisions of this act to be made may be received in evidence in all the courts of this State, in the same manner and with like effect as certified copies of the original record."

By the amendment of 1876 the period of limitation prescribed in section 4 above was changed so as to require the second registration within three years, instead of five; and by the later amendment of 1879, that period was fixed at four years.

It is here insisted, that as the original deed in question in this case was not "saved or preserved from loss," as provided in section 4 of the foregoing act, no duty devolved upon the appellant to provide for a second registration.

In this construction, we think that the provisions of sections 1 and 2 of the act are overlooked. It will be observed that they provide for the supplying of means of parol proof of the lost or destroyed record of a deed, without reference to the existence or nonexistence of the original. The duty then, we hold, devolved upon appellant to avail itself of the power to supply the lost record, which thus supplied would have had the same effect as the original record.

This duty rested upon the appellant without reference to the provisions of section 4, or to the preservation or loss of the original. It is true that no period of limitation is prescribed in sections 1 and 2 of the act within which the lost record shall be supplied, the only limitation provided for being contained in section 4 of the act; but in the absence of any express limitation, it would follow, we think, that the privilege of supplying the registry should be exercised at least before the purchase of a third party, the appellee in this case.

The act of 1876, which contains a repealing clause, has been held to abrogate the rule announced in Fitch v. Boyer, supra. O'Neal v. Pettus, 79 Texas, 256.

The appellant, which held under the deed here in question, is presumed to have immediately known of its destruction in 1876. Magee v. Merriman, 85 Texas, 108. It took no steps to cause its substitution by Mrs. E. A. Hendricks, who, it appears, was then easily accessible, or to cause the supplying of the destroyed record by the legal methods prescribed as above.

Upon our construction of the foregoing act, it follows that the previous registry, on account of the failure of the appellant to follow the provisions of that act, lost all efficacy.

We therefore order an affirmance of the judgment.

*Affirmed.*

Delivered June 26, 1895.