# JOHN M. BARRETT, Appellant, v. CLAUDE R. BALL, Respondent.

### St. Louis Court of Appeals, March 31, 1903.

1. **Attorney and Client: DEALINGS BETWEEN THEM: PUR-CHASE SET ASIDE: ACCOUNTING ORDERED.** The evidence shows that plaintiff is an old man of seventy years, almost blind, weak physically, shiftless, ignorant and of irregular habits and was heir to a small estate from his son in Tennessee; that defendant is a lawyer and as the attorney of plaintiff was very familiar with the condition of the estate going to plaintiff, which defendant had, as he claims, purchased by written transfers, of plaintiff for a money consideration. *Held*, that owing to the relation of attorney and client existing between plaintiff and defendant at the time of the alleged purchase, the same could not stand, but should be set aside, and an accounting should be taken to ascertain the amounts received by defendant, which he should be ordered to pay plaintiff with interest, after deducting a reasonable sum for his services and expenses in collecting the same.

2. ———: **ASSIGNMENT BY ATTORNEY TO CLIENT, REVIEW-ABLE.** Where an attorney had previously represented plaintiff in obtaining administration on the estate of his deceased son, and, after termination of his employment, plaintiff assigned to such attorney his entire interest in the son's estate, the validity of such assignment will be reviewed in a subsequent suit to set it aside in the same manner as though the relation of attorney and client had continued.

3. ———: ———: **NO FRAUD, BUT FAIR.** Transactions between attorney and client must be free from suspicion of fraud, and fair, or they will be set aside; and there must be no advantage apparent in favor of the attorney, if the business is to be upheld by a court of equity.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes*, Judge.

REVERSED AND REMANDED *(with directions)*.

STATEMENT.

In September, 1898, plaintiff's minor son, Arthur Barrett, died in the State of New York and his remains, together with his money and jewelry, in value about $1,500, were shipped back to Montgomery county, Missouri. In addition to the above property, the deceased was entitled to $1,093 for services under a contract of employment with E. S. Gardner & Son, of Sumner county, Tennessee. T. J. Powell, as public administrator of Montgomery county, took charge of the property sent to Missouri, in September, 1898, and later E. S. Gardner was appointed his administrator and took charge of the estate of the deceased in Tennessee. Under the laws of Tennessee, plaintiff inherited all of the property of the deceased minor son in that State. Under the laws of Missouri, the estate in course of administration in the hands of the public administrator was divisible into six parts, of which plaintiff as father of the deceased, was entitled to one portion. The defendant acted as attorney for plaintiff and one of the other heirs in applying for an administrator in the State of Missouri and in having the letters of administration by the public administrator taken out, and thereafter defendant was retained by the public administrator as attorney in the course of the administration. On September 9, 1899, plaintiff executed and delivered to defendant an instrument in the form following:

"I, John M. Barrett, of Truxton, Lincoln county, Missouri, the father of Arthur Barrett, deceased, and being a lawful heir of such estate, for value received, do hereby sell, assign, transfer and set over unto Claude R. Ball, of Montgomery City, Missouri, all my right, title and interest in and to the estate of Arthur Barrett, deceased, now in the hands of Thomas J. Powell, public administrator of Montgomery county, Missouri (who is public administrator in charge of said estate). And

said Thomas J. Powell, public administrator in charge of said estate of Arthur Barrett, deceased, or his successor as such administrator, is hereby directed to pay over unto said Claude R. Ball, all moneys due me as an heir to such estate, at any and all times, when a distribution of said estate is had or made, and all claims of whatever kind that I may have against said estate I hereby for value received, assign to Claude R. Ball. Dated this 9th day of September, 1899.''

At the time of the execution of this assignment, the defendant paid the plaintiff therefor the sum of $75, and later in turn, defendant purchased the interests of other heirs of the estate of Arthur Barrett, paying for one $75, and for two, $140 each. March 28, 1900, plaintiff executed and delivered to defendant the following additional instruments:

''Montgomery City, Mo., Mar. 28, 1900.
''E. S. Gardner & Son,
    Saundersville, Tenn., or to
''Ed. Gardner, Jr., Administrator of the estate of Arthur Barrett, deceased.

''Please pay to Claude R. Ball, of Montgomery City, Missouri, all moneys in your hands belonging to the estate of Arthur Barrett, deceased, due me as the father of Arthur Barrett, deceased, according to the law of descents and distributions of the State of Tennessee, whether in your hands as individuals, or whether in the hands of Edward Gardner, Jr., as administrator of said estate, and this order when countersigned by Claude R. Ball, shall be your receipt for the same. The identification of Claude R. Ball is hereby waived.

''Yours truly,
''JOHN M. BARRETT.

''State of Missouri, county of Montgomery, ss.

''I hereby certify that on this 28th day of March, 1900, the above article was signed by John M. Barrett and that his signature thereto is genuine. I further

certify that I am personally acquainted with John M. Barrett.

"In witness whereof, I have hereunto sent my hand and affixed my official seal at my office in Montgomery City, Missouri, this 28th day of March, 1900.

"THOMAS T. JOHNSON,
"Clerk Circuit Court Montgomery County, Missouri."

"State of Missouri, county of Montgomery.

"John M. Barrett, being duly sworn upon his oath says, that he is the father of Arthur Barrett, deceased; that Arthur Barrett was born August 10, 1878; that he died at Sheepshead Bay, New York, on September 10, 1898; that he was killed while in the services of E. S. Gardner & Son; that his remains were shipped to me at Montgomery City, Missouri, and his remains buried in the cemetery at Montgomery City, Missouri; says further that at the time of the death of Arthur Barrett he was under the age of twenty-one years; that he was single and unmarried and left no widow or children to survive him; that his parents and living brothers and sisters are as follows: John M. Barrett, father; Martha Jane Barrett, mother; Bell Woolwine, sister; D. Boone Barrett, brother; Elmer Barrett, brother; Bailey Barrett, brother; and Maude Barrett, sister; Helen Pennington, an infant girl named ——— Grupp, daughters of Bettie Grupp, deceased, who was a sister of Arthur Barrett, deceased. The said Helen Pennington and infant girl baby, name ——— Grupp, are nieces of Arthur Barrett, deceased, that all of the above named are of lawful age except Maude Barrett, Helen Pennington and the little Grupp girl who are minors; says further that the said Arthur Barrett was never married.

"JOHN M. BARRETT.

"Subscribed and sworn to before me this 28th day of March, 1900.

"THOMAS T. JOHNSON,
"Clerk of the Circuit Court."

"State of Missouri, county of Montgomery.
"George W. Boddie,

Clerk and Master of the Chancery Court,

Sumner County, Tenn.

"Dear Sir: I am the father of Arthur Barrett, deceased, who died in September, 1898, at Sheepshead Bay, New York, while in the service of E. S. Gardner & Son, of Saundersville, Tenn.

"You will please pay to Claude R. Ball, of Montgomery City, Missouri, all the money in your hands belonging to me as the father and heir of Arthur Barrett, deceased, according to the laws of descents and distributions of the State of Tennessee, and this when countersigned by the said Claude R. Ball, shall be your receipt.

"Dated at Montgomery City, Missouri, this 28th day of March, 1900.        JOHN M. BARRETT.

"I hereby certify that the above instrument of writing was signed by John M. Barrett; that the same was signed in my presence and that his signature thereto is genuine; I further certify that said John M. Barrett is the father of Arthur Barrett, deceased, who died as stated in the above manner.

"In witness whereof, I have hereunto signed my name and affixed my official seal. Done at my office in Montgomery City, Missouri, this 28th day of March, 1900.        THOMAS T. JOHNSON,

        (Seal.)                "Clerk Circuit Court,

"Montgomery County, Missouri."

"State of Missouri, county of Montgomery, ss.

"I, John M. Barrett, father of Arthur Barrett, deceased, formerly a resident of Truxton, Lincoln county, Missouri, but now a resident of Warrenton, Warren county, Missouri, for value received do hereby sell, assign, transfer and set over unto Claude R. Ball of Montgomery City, Missouri, all my interest as the father and heir of Arthur Barrett, deceased, and do by

these presents sell, assign, transfer and set over unto said Claude R. Ball all my interest in and to the estate of my deceased son, Arthur Barrett, there being an administration on said estate in the probate court of Montgomery county, Missouri, at Montgomery city, in said county, of which Thomas J. Powell is the administrator of and in charge of said estate, also there is an administration on said Arthur Barrett's estate in the county court or chancery court of Sumner county, Tennessee, Ed. Gardner, Jr., being the administrator of and in charge of said estate, in the State of Tennessee.

"Now by these presents I sell, assign, transfer and set over unto said Claude R. Ball all my interest in the estate of said Arthur Barrett, both in Missouri and Tennessee, and the administrator of said estate in Missouri, and the administrator of said estate in Tennessee, are hereby authorized and directed to pay to said Claude R. Ball all my interest as father and heir to the said estate of Arthur Barrett, deceased.

"The administrator of Montgomery county, Missouri, is directed to pay my interest in said estate to Claude R. Ball, my interest to be determined according to the laws of descents and distributions of Missouri, and the administrator of said estate pending in the courts of Sumner county, Tennessee, is hereby authorized and directed to pay to Claude R. Ball all moneys due me from the estate of Arthur Barrett, according to the laws of descent and distributions of the State of Tennessee.

"In witness whereof, I have hereunto set my hand at Montgomery City, Missouri, this 28th day of March, 1900.                    JOHN M. BARRETT.

"State of Missouri, county of Montgomery, ss.

"Be it remembered that on the 28th day of March, 1900, before me a clerk of the circuit court of Montgomery county, Missouri, personally came John M. Barrett, who executed the foregoing instrument of writing in my presence and acknowledged the same to be his

free act and deed for the uses and purposes therein mentioned.

"I further certify that I am personally acquainted with John M. Barrett and that his signature above is genuine.

"In witness whereof, I have hereunto set my hand and affixed my official seal. Done at my office in Montgomery City, Misouri, on the day and year first above mentioned.                     THOMAS T. JOHNSON,

"Clerk of the Circuit Court."

Upon the receipt of these papers thus executed, the defendant proceeded to Gallatin, Tennessee, and a decree was entered in the chancery court directing the payment to defendant, as attorney of plaintiff, the sum of $573.80, after the collection of which defendant returned to Montgomery county. Defendant later collected the further sum of $96.20, again visiting Gallatin for such purpose.

This action was brought to the May term, 1902 of the circuit court of Montgomery county. The petition originally contained two counts, but a demurrer was sustained to the first count; the second is as follows:

"Plaintiff for further and separate cause of action against the defendant states that plaintiff's son, Arthur Barrett died intestate about October, 1898, owning a large amount of personal property in the county of Sumner, in the State of Tennessee, and the said property was duly administered upon in said county and State, and that the proceeds thereof after deducting all cost of administration amounted to the net sum of $626.40, and that under the law of descents of the State of Tennessee, plaintiff was and is the sole heir of said Arthur Barrett, deceased, as to all property owned by said Arthur Barrett, deceased, at the time of his death, in said county of Sumner and State of Tennessee. Plaintiff further states that about April, 1900, defendant agreed to go to Sum-

Barrett v. Ball.

ner county, Tennessee, as attorney for plaintiff and collect the money due plaintiff from said estate of Arthur Barrett, deceased, in said county and State, and that defendant requested plaintiff to give him written authority to collect said money. Plaintiff states that defendant thereupon prepared two written instruments which he represented to plaintiff were for the purpose of authorizing defendant to collect said money for plaintiff; that defendant read over one of said written instruments to plaintiff which said instrument contained authority to defendant to collect said money for plaintiff and nothing more, and that defendant represented to plaintiff that said other written instrument was a copy of the one so read over; that thereupon plaintiff relying upon said statement of defendant signed and acknowledged both of said written instruments, leaving them in the possession of defendant, and that in truth and in fact the one of said written instruments that was not read over to him purported to be an assignment for value received of all of plaintiff's right, title and interest in the estate of Arthur Barrett, deceased, wherever located, to defendant, and that plaintiff did not discover that said written instrument purported to be an assignment until November, 1901. Plaintiff further states that said alleged assignment was based on no consideration whatever. Plaintiff further states that defendant thereafter proceeded to collect all the interest of plaintiff in the estate of Arthur Barrett, deceased, in the county of Sumner and State of Tennessee amounting to the sum of $626.40 and that defendant has failed and refused and still refuses to pay same over to plaintiff but claims the ownership thereof under said alleged assignment. Plaintiff further states that said written instrument purporting to be an assignment is now in the possession of defendant and that defendant has refused to permit plaintiff to take a copy of same and that plaintiff is therefore unable to set the same out in full in this petition.

"Plaintiff further states that defendant is an attorney at law and that immediately after the death of Arthur Barrett, deceased, plaintiff consulted defendant with reference to instituting an administration on said Arthur Barrett's estate in Montgomery county, Missouri, and that at the instance of plaintiff defendant prepared and filed in the probate court the necessary papers to institute said administration, and that thereafter defendant acted in the capacity of attorney for the public administrator of Montgomery county, Missouri, in the matter of said estate and was acting in that capacity at the time plaintiff signed said alleged assignment and that defendant was familiar with the condition and value of said estate both in Montgomery county, Missouri, and Sumner county, Tennessee. Plaintiff further states that at the time said alleged assignment was signed by plaintiff, plaintiff was, on account of his age, physical infirmities and lack of knowledge of business affairs, incapable of properly attending to complicated matters of business, and that having confidence in defendant, he relied upon the advice and statement of defendant in signing the two written instruments aforesaid.

"Plaintiff further states that the rules of common law afford him no adequate relief in the premises.

"Wherefore plaintiff prays the court that said written instrument purporting to be an assignment be ordered delivered up and cancelled, and for naught held, and also for a judgment against the defendant for said sum of $626.40 collected by defendant in the State of Tennessee aforesaid, with six per cent interest from the date of the filing of this petition, and for such other orders, judgments and decrees as may to the court appear just and proper."

Defendant made answer to the second count, first, by way of general denial, and next, by the specific allegation that he bought without reservation the entire interest of plaintiff in and to the estate of Arthur Bar-

rett, deceased, wherever situate. A trial was had before the court which rendered judgment for defendant and plaintiff has appealed to this court.

The record is made up chiefly of the testimony of the opposing parties including their oral testimony at the trial and their depositions prior to the hearing. The plaintiff testified and deposed that he was born in April, 1834; that at the time of the death of his son, the estate of the latter consisted of the jewelry and money sent with his body to Montgomery City, and the amount of wages accrued in the hands of Gardner & Son in Tennessee in whose employ the deceased was when he met his death. That he had employed defendant to collect the money coming to him in Tennessee, having talked to him about it and also with Powell the administrator and that Powell had said that he did not believe he could get it. Plaintiff further narrated that in March, 1902, he met defendant at the depot at Warrenton, where witness was then residing, shook hands with him and in response to an invitation to take a walk up town, accompanied him to an office, where defendant began preparing upon a typewriter something in the form of a sale by witness, who then protested he was selling nothing, and defendant then destroyed what he had written and asked plaintiff to accompany him to Montgomery City, upon which he replied he would have to go to the hotel and get some money, and defendant answered that he would get his ticket and thereupon he accompanied defendant to his office at Montgomery City where the papers were drawn, part of which were read over to plaintiff, and then they proceeded to the office of the circuit clerk where the plaintiff acknowledged his signatures, that the defendant read but a single paper, but plaintiff, thinking it was all right, signed two papers and defendant said he would collect the money for him. That he would send him a draft when he got back after its collection, but plaintiff answered that he did not want a draft but would go up to Pike

county pretty soon; and later, hearing nothing from him he returned and asked defendant about the affair, and he said that he had collected only a part and to wait until he could collect the balance; that he thought he could collect the balance pretty soon, and that he would send him a draft but again plaintiff told him that he should not send a draft, that he would return for the money. That in the meantime he had moved from Warrenton to Truxton, and that when he again saw defendant in the fall of 1901 at his office and told him he had come to get the money, defendant replied that he did not owe him anything, that he had bought all, to which defendant answered that he had bought what was in the hands of Powell in Montgomery City, only, and defendant ordered him out of the office and this suit followed.

Plaintiff further stated that when defendant met him at Warrenton he told him that he could get the money for him, that at that time he did not know or remember that the administration was pending on his son's estate in Tennessee; that at the time he sold to defendant he needed money as he wanted to go to St. Louis to have his eyes treated. That he never tried to sell his interest in the estate to Powell, but had applied to Powell for a portion of the money in his hands and Powell had refused to advance him any, but referred him to defendant to purchase his interest, and he thereupon went to defendant for that purpose; that at the time he was negotiating with defendant to sell his interest in the estate of his son, he did not understand he was selling all his interest, nor did he ever tell anyone that he had; that he did not then think the Tennessee money would be paid into the hands of Powell or he would not have taken $75 for his share in the estate, although he then needed money badly. That he saw defendant twice respecting the sale of his interest to him in September, before he executed the first assignment for which he received $75, but that it was not at his sugges-

tion that the consideration was omitted; that at the time he employed the defendant to go to Tennessee to collect the money he had made no agreement for the amount he was to pay him, the defendant had said he would go for whatever was right and that was all there was about it. That the defendant asked no money for his expenses to Tennessee; that he knew at that time there was considerable money in Tennessee, but not the exact amount; that he then supposed the money was still in Gardner's hands; that at the time he acknowledged the papers before the circuit clerk he thought they were papers authorizing the defendant to collect the money for witness; that in signing the papers at that time he supposed that defendant knew his business; that in May following he told defendant he required some money and defendant replied that he had only collected part of the money and that he could not let him have any of it until he got it all and finally handed defendant $1.50; that this was about two months, perhaps three months, after the 28th of March, 1900. That at the time he sold his share in the estate in Montgomery county, he thought it would be about $150; at the time he signed the papers in March, no money or other consideration was paid to him but that he thought defendant was honest and would do right to him as soon as he got the money.

The defendant deposed that he had known John M. Barrett all his life; that soon after the burial of Arthur Barrett in Montgomery county in September, 1898, plaintiff and his son Boone consulted him respecting the settlement of the estate of the deceased; that he advised Boone and his father regarding the most economical way of disposing of the estate, and had suggested an administrator, and finally prepared an affidavit for plaintiff and his son which was signed either before him, or before an officer of the probate court and filed in the probate court and Powell took charge of the estate. At this time plaintiff stated that plaintiff's wife had

received a draft from New York for $1,000 which she would not give up, and that she had given her son Bailey $500, and had deposited $500 in the Union Savings Bank. The administrator, upon taking charge of the estate, notified this bank not to pay the money to Mrs. Barrett, claiming it as part of the estate of the deceased and later the defendant obtained a check from Mrs. Barrett and collected it from the bank. That he had brought suit for the administrator against Mrs. Barrett and Bailey for the money she had given to Bailey and for $430 worth of jewelry received, and recovered judgment for $930 against them, defendant representing Thomas J. Powell, administrator, in such action. That in September, 1889, plaintiff approached him on several occasions to purchase his interest in his son's estate, stating that if defendant would not buy, some one else would, and he finally bought his interest at $65; and at this time plaintiff was in normal condition and knew the difficulties connected with the estate; that he had tried to sell it to Powell who refused because he was administrator and had referred him to witness; that he told defendant it might be to his interest to hold his share and not sell it; that he told plaintiff that he knew the condition of the estate in Tennessee pretty well as he had gathered it from Powell, and the estate was mixed up down there and they could not tell heads or tails where it was going nor how much would be gotten out of it, and when defendant finally bought, defendant said, "I won't give you a dollar more than $75 for your interest in the estate of Arthur Barrett, deceased, both in Missouri and Tennessee, the whole estate;" that at the time he had said to defendant that if the assignment was not full enough he could expect a more perfect assignment; that Powell, as administrator, had corresponded with the attorney for Gardner & Son with which correspondence both he and plaintiff were then familiar, and that Powell had received a letter from Gardner stating that plaintiff was entitled to the fund

in Tennessee and that Barrett had so informed him; that the letters the administrator had received left the impression upon both the administrator and witness that it would be but a short time until Powell would receive the money owed by the Gardners, until February, 1900, when Powell received a letter from them stating that the matter had been closed by payment of the money to the clerk and master in chancery, until which time the impression prevailed that the money would be paid into the hands of Powell. *Up to the spring of 1900, there was no question, and up to the receipt of Gardner's last letter there had been no question,* but that the money would be paid over to Powell, as administrator, and that all those interested in the estate would participate in its distribution. That he did not find out for certain until he went to Gallatin, Tennessee, that the money would not be paid into the hands of Powell as administrator. That Powell had become dissatisfied with the way in which affairs were progressing in Tennessee, and that witness went to Warrenton to see plaintiff and informed him he was going to Tennessee and told him that Powell and himself had talked the matter over and if he could not get the money for Powell, he would get it for himself, and that he had come to plaintiff to procure a perfect assigment or bill of sale, so that there could be no question and that he wanted an order of G. W. Boddie, an order of E. S. Gardner & Son, and an order on E. S. Gardner, Jr., as administrator, so that there would be no question of his right to collect the money, adding that if he succeeded in collecting all the money in the hands of the Gardners, he would make a present of $50 or $60 to plaintiff, who replied, "All right, whatever you want to give me will be accepted. It is yours and you bought it." That they then proceeded to Peers' office to draw up the necessary papers, but on arrival they found a Smith Premier typewriter machine, which defendant could not operate and finding further that

they would not have time, he so informed Barrett and
destroyed what he had written without reading it to
Barrett and asked him to accompany him to Montgom-
ery City, which he consented to do if his expenses were
paid; that when they arrived at Montgomery City they
went to defendant's office and the assignment and other
papers were drawn and signed in duplicate; that the
information in the affidavit was obtained from defend-
ant.   The papers were all dated March 28, 1900, and
read to plaintiff, and the assignment was especially read
over and explained to him by defendant and he fully
understood it.  Plaintiff understood every paper signed
and they then went down and acknowledged them and
the circuit clerk asked the plaintiff if the signatures
were his, and if he was acquainted with the contents,
or something to that effect, and Barrett replied that he
understood.   That the reason for obtaining duplicates
was that he did not know what Gardner & Son, or E. S.
Gardner, Jr., also, would want and that there was money
held by Gardner & Son or E. S. Gardner, Jr., something
over $200, and the assignment was fixed so he could
use it with Boddie, the clerk, to get what money was
in his hands, if any, and use the other with E. S. Gard-
ner, Jr.   That shortly before he went to Gallatin,
Powell and himself visited the law library at St. Louis,
examined the statutes of Tennessee and discovered that
in Tennessee, unlike Missouri, the father inherited and
he obtained a perfected assignment so that his own in-
terests would be absolutely protected, and all other
papers he took so that he would have no trouble in
collecting the estate if they refused to pay it to Powell as
administrator.   That he took all these papers when he
went to Gallatin on his first trip as well as written
authority from Powell.   That he went to Gallatin rep-
resenting Powell as administrator of Arthur Barrett's
estate and on his own behalf as well; that he occupied
the position of owner and attorney.   That the relation
of attorney and client did not exist between plaintiff

Barrett v. Ball.

and himself and had never existed, except in so far as to draw up the original application for an administrator was concerned; that Powell advanced $40 for this trip and upon his arrival in Tennessee he presented the authority of Powell to the attorney at Gallatin, with whom they had corresponded and employed to assist in the matter, and this attorney, Bell by name, took defendant over and presented him to Dismukes, attorney of the Gardners, who in turn introduced him to the clerk and master in chancery, Boddie; that he showed his authority and said he was there to get the money for Powell as administrator if it could be so obtained; if not, he would take it as his own, showing the letter of authority and assignment; that he showed the different orders and assignments to the attorney of the Gardners; that the court was not in session and finally after consultation between the parties named, it was suggested that a decree be prepared reciting that the costs of the court and administrator's expenses should first be paid and the balance turned over to defendant; that he was advised that the statutes of Tennessee did not recognize foreign administrators and the estate could not be transferred to the administrator in Missouri. The costs and expenses were computed, a decree drawn and put on record; that he received from the master in chancery $535.20, paid his attorney $25; collecting the money as the assignee of plaintiff; that he next saw plaintiff after his return on May 2; that he returned April 3; that when he saw plaintiff about the first of May, he had no conversations with him respecting his trip to Tennessee but was requested to loan plaintiff $5; that he told plaintiff he did not have that much but gave him $3 and plaintiff then asked what success he had had in Tennessee, and he said they had kept $300 which they ought not to have kept, and that he would have to make a fight; that he made no demand then for any money collected in Tennessee. That he saw him once or twice after that on the street, and spoke to him casually; that he never made

any request or demand until about October or September, when he came into the office in an intoxicated condition, and asked how much of the money received in Tennessee defendant was going to give him, and he replied he did not owe him a cent and plaintiff answered that he knew that, but that he ought to give him something, and defendant further answered that he was not able to give him any money whereupon plaintiff became angry, and that he ordered him out of the office, and no other demand was ever made on him for the Tennessee money.

On cross-examination, defendant said that in a deposition he had testified that at the time he took the assignment from plaintiff, he knew the father inherited the property of the deceased son in the State of Tennessee, and that plaintiff also knew this at the time and so stated.    That plaintiff made no objection at any time to the money coming into Powell's hands, and after he bought his interest, made no objection to it passing into his hands; that in his deposition he said, that at the time he bought Barrett's interest he knew he was the only one who would participate in the Tennessee estate and was entitled to inherit all in the hands of the administrator in Tennessee; that it occurred to him to obtain the assignment in March, after he had examined the statutes of Tennessee, and found that the statute was more emphatic than he thought as to the right of plaintiff to the whole estate; that the statute was more emphatic than the information obtained, through the letter from Gardner to Powell of September, 1898; that at the time he bought plaintiff's interest in September, 1899, he had been informed of the receipt of this letter and knew its contents and that plaintiff then had the same information; that he did not then know that plaintiff considered that the money which had accrued under the contract of his minor son would come to him by law and did not know that it formed part of the boy's estate. That plaintiff had said he had no objection and made

no objection to this money going into the estate of his son in this State; that the suggestion to plaintiff when he took his assignment in September, 1899, that he might later want a more complete or full assignment arose from the knowledge of the estate in Tennessee; that the estate was supposed to come to Missouri, that that seemed to be the advice of the lawyer and Powell and of Gardner, but that in case of any trouble he wanted a perfect assignment. That he did not draw a perfect instrument in the first place because plaintiff wanted to return on the afternoon train and it took some time to draw up the assignment, that he thought the assignment of September, 1899, was complete and full, and that other people who had to be consulted might not consider such assignment a full assignment.

The record of the decree of the chancery court of Sumner county, Tennessee, dated March 31, 1901, recited the administrator had in his hands of the estate of Arthur Barrett, the sum of $1,093 from which, deducting expense of administration, $305.50, left a balance due the estate of $787.50 of which the administrator had paid into the chancery court $573.80, and that it further appearing to the satisfaction of the court that Claude R. Ball, an attorney representing the Missouri administrator, Thomas J. Powell and also John M. Barrett, father of Arthur Barrett, deceased, and that said Ball as attorney for such parties had filed with the clerk and master in chancery of the court his written authority and power to receive and receipt for the fund, then on hand and that John M. Barrett, being the legal heir of his son, was entitled to such fund, it was ordered and decreed by the court that the clerk and master in chancery pay over to Claude R. Ball as attorney for John M. Barrett, the fund due the estate, taking his receipt as attorney of John M. Barrett for same, said Ball as attorney also to execute to the clerk and master, his receipt for the amount but said receipts thus ex-

ecuted should not be taken in full settlement due said Ball as attorney for John M. Barrett, for the reason there appeared from the record of the county court to have been a mistake as to the amount due from E. S. Gardner, Jr., the administrator to the estate of Arthur Barrett, deceased, the court being of the opinion that said administrator had failed to pay in all that was due by him, and that the decree was not intended to adjudicate the matter, but the amount of this discrepancy was held in abeyance for further adjudication, and whatever such balance might be ascertained to be due by the administrator, he was authorized and directed to pay into court, take a receipt of the clerk and master therefor, and the clerk and master, upon receipt of such fund, should transmit same to Claude R. Ball at Montgomery City and take his receipt for the same. Defendant further testified that he was present when the decree was drawn up and entered in the court, but the decree was written up by Dismukes; that when he went to Tennessee in March, 1901, he receipted for $555.20, paying Bell $25; that he did not know whether Bell receipted to him therefor as attorney in the case of Ball v. Barrett, but the receipt would speak for itself; that Bell did not receipt to him as assignee of John M. Barrett, that he did not ask him to, that he cared nothing about it. That he accepted the $555.20 after the decree ordered it paid over to him as attorney for John M. Barrett; that he returned to Tennessee in March, 1901, and collected $98.20 from the administrator of Arthur Barrett, making a total in all of $785.40 for which he had given $75; that at the time he bought of Barrett, September, 1899, he had no reason to believe he would collect more than he had collected or that there would be more coming to Barrett from Tennessee; that estimating the amount in Tennessee at $1,093, and allowing $200 expenses, the heirs would be entitled to $300 and odd apiece, upon the theory that the Tennessee property should come in and be divided equally between

the heirs in Missouri.   That at the time he bought from Barrett, he knew the law, according to Mr. Gardner, was that Barrett alone would inherit in Tennessee 'but everything then tended to the turning over of the money to Powell; that at the time of the first assignment, he knew the amount in the hands of the administrator, Powell, and that he and Powell had computed the amount in settling the judgment against Mrs. Barrett and Bailey Barrett before the assignment in September, 1899; that although he knew that the law obtained that plaintiff would inherit all the money in Tennessee, and that an administrator had been therein appointed, he was under the impression that it was going to Powell's hands to be divided between the heirs equally because no objection was being made by anybody.   That after collecting $555.20 he remained in Gallatin two days; that he had protested to Dismukes that he did not represent Barrett as attorney, but that he represented Powell, but Dismukes said the decree was drawn in that form, and it did not amount to anything, and that his authority was on file and he had his assignment and that it did not make any difference.

*A. W. Lafferty* for appellant.

(1)   The verdict is against the evidence, and is against the weight of the evidence.   (2) The bargain testified to by defendant was unconscionable, and can only be accounted for on the ground of fraud or imposition.   It was the duty of the court, under these circumstances, to declare it fraudulent, whether actual fraud was proved or not.   Dixon v. Kempinsky, 96 Mo. 252. (3)   Inadequacy of consideration, coupled with inequality of parties, or other incidents of fraud, will justify a court of equity in interposing its relief.   2 Pom., Eq., secs. 926, 927.   (4)   If a bargain be such as no man in his senses would make on the one hand, and as no honest and fair man would accept on the other, it will be relieved against, but if the parties be com-

petent to contract, and neither takes any undue advantage of the other, it will not be disturbed. Tison v. Labeaume, 14 Mo. 198.

*E. P. Rosenberger* for respondent.

(1) Plaintiff voluntarily sold his part of the estate to defendant, and having done so with a full understanding of the matter, he has no right to complain. Hempler v. Schneider, 17 Mo. 258; Stillwell v. Aaron, 69 Mo. 545. (2) The act of plaintiff on March 28, 1900, in giving defendant a complete or supplemental assignment, was his plain duty. He had sold his share of the estate to defendant, and it was his plain duty to see that defendant was protected. Tison v. Labeaume, 14 Mo. 220. (3) In this case there is no evidence of fraud, imposition, accident or mistake in the creation of the assignment. The plaintiff deliberately sold his part of the estate to Ball for $75. There is no case where mere inadequacy of price independent of other circumstances has been held sufficient to set aside a contract between parties standing on equal ground and dealing with each other without any imposition or oppression. Williams v. Jenson, 75 Mo. 681; Wirt v. Shuman, 67 Mo. App. 173; Fitzgerald v. Fleming, 58 Mo. App. 188. (1) In this case there is no inequality of the parties. At the time the sale was made Barrett had learned from Powell the condition of the estate. Ball got his information from the same source. The consideration was a valid one, one that plaintiff agreed to and accepted, "and he must abide the consequences of his own bargain deliberately entered into." Hempler v. Schneider, 17 Mo. 260; Wirt v. Schuman, 67 Mo. App. 173; Stillwell v. Aaron, 69 Mo. 545.

REYBURN, J.—From the record the history of the transaction herein sought to be annulled may be thus outlined: In September, 1898, having been consulted by plaintiff regarding the estate of his son, Arthur

Barrett, then lately deceased, the defendant prepared an affidavit for signature of plaintiff and his son, which was filed in the probate court and the public administrator directed to take charge of the estate, defendant being employed by Powell and conducting one or several suits on his behalf as such administrator for the recovery of assets of the estate. In September, 1899, for the sum of $75, plaintiff executed an assignment to defendant, by virtue of which defendant, as assignee, had collected $136 from Powell as the distributive share of plaintiff in the estate in Missouri. In March, 1900, having first ascertained by telephone communication that plaintiff was in Warrenton, defendant met plaintiff there and at his own expense took him to his office at Montgomery City where the second or full assignment with the accompanying orders were drawn by defendant, signed by plaintiff and acknowledged before and certified to by the clerk of the circuit court. The latter states that he knew nothing of the contents of the instruments, and they were not read over to plaintiff in his presence, but he asked plaintiff the usual question whether he had signed them and he answered in the affirmative. Armed with the authority contained in these instruments, as well as under power of attorney from Powell as administrator, defendant proceeded to Tennessee and after a delay of two days a decree was prepared by the local attorneys, one acting in the interest of the Tennessee administrator and one under employment by defendant and Powell, by the terms of which $573.80 was ordered to be paid to defendant as attorney of John M. Barrett as the legal heir of his son; this decree was entered of record in the chancery court of Sumner county, and the sum therein named was by the clerk and master in chancery paid to and receipted for by defendant. At the time of the first assignment, by correspondence, defendant knew that under the laws of Tennessee, the father inherited the estate of the son under the conditions herein presented. Plaintiff disclaimed any knowl-

edge then or later of administration in Tennessee, but believed he was entitled by law to the sum of money representing the unpaid earnings of his minor son. There is no dispute respecting the affair thus far except that plaintiff was charged by defendant with knowledge of the pendency of administration in Tennessee, and acquiescence in the payment if practicable, of all assets to the Missouri administrator for distribution under the laws of Missouri, which would have resulted in great loss to plaintiff. In determining whether a court of equity should annul a transaction such as is here presented, many elements enter into consideration, some of which alone would not warrant equitable interposition but which, united and concurring, will present together such a situation, as to make it the duty of the court to afford relief. Mere inadequacy of price is not *per se* a ground recognized in equity as sufficient for avoiding a sale, for if parties are not, from attending circumstances, under personal disability, they are free to dispose of their property upon such terms as they may elect, and whether such transactions are prudent or profitable are questions not to be decided by courts of justice, but by parties directly concerned. But if the inadequacy of consideration be gross, and this feature combines with the further incidents of old age, confidential relations, or great mental inequality between the respective parties, a court of equity should not hesitate to interfere. The proof shows that the plaintiff is a man approaching seventy years of age, impaired in sight, in feeble physical condition, shiftless, ignorant and irregular in his habits, while defendant is a member of a learned profession and had acquired the familiarity he possessed with the condition of the assets of Arthur Barrett's estate as the direct result of the professional conference had with him by plaintiff, and the consequent administration in Missouri. The rule is well settled that there is no class of transactions respecting which courts of equity are more jealous, or

scan more critically than dealings between clients and attorneys, and where an attorney bargains with a client to his own advantage, it devolves upon the attorney to show that he fully and faithfully discharged his duties without misrepresentation or concealment of any material fact, and the client was fully informed of the extent and character of his rights and interests in the subject-matter of the transaction and the effect of the contract, and so situated as to deal at arms-length with his counsel. That this doctrine is so well established as to require no authority in support, would doubtless be conceded by defendant, but its application herein is questioned as the existence of the relations of attorney and client between the parties was alleged to have ceased prior to the date of the transaction. But it has been well said that where a relation which presupposes an ascendant or controlling influence by one party on the mind of the other has existed, the influence acquired by such relation may extend more or less after the period of its termination, and when such is the case, the transaction will be scrutinized with the same jealousy as if the relation had continued. Mason v. Ring, Abbots' Prac. Rep. (N. S.) 322; s. c., 3 N. Y. Court App. 210.

. In the application of these well-recognized principles to the case herein presented, a court of equity should not turn a deaf ear to such an appeal for relief. "It would be doing violence to the name and principles upon which courts of equity have been builded into our system of jurisprudence to refuse the plaintiff the relief he asks for in such case." Gottschalk v. Kircher, 109 Mo. 186.

The judgment will be reversed and cause remanded with directions to the lower court to order an accounting by defendant and after allowing defendant credit for the reasonable and proper expenses and costs of the journeys to Tennessee and for his professional services rendered in collecting the funds in Tennessee, that a

judgment be rendered against defendant for the balance of the total amount collected in Tennessee with interest from the date of filing the petition herein. *Bland, P. J.,* and *Goode, J.,* concur.