### John W. Hurst v. E. P. Marshall et al.
#### No. 2763.

1. **Investment by Guardian.**—The same notice of an intended application by a guardian to invest the money of his ward in land must be given that is required in an application to sell the ward's land. Unless the contract of purchase is approved at a regular term of court the investment of the ward's money is without authority of law, and its repayment by sale of the land may be enforced at the suit of the ward as against parties with notice.

2. **Same.**—If the guardian, without the approval of the court in which the guardianship is pending, invests the ward's money in land, taking deed to himself and the ward jointly, and giving note with express lien for deferred payments, the lien of a purchaser of the lien notes with notice is subordinate to the superior right of the ward to reimbursement of his money wrongfully invested in the land.

3. **Same—Notice.**—The recitation in the notes that they were given for the purchase money of the land, and the signature of the guardian thereto, as such, were sufficient to put the assignee of the notes on inquiry, and charge him with notice.

APPEAL from Red River. Tried below before Hon. E. D. McClellan. The opinion states the case.

*Sims & Wright,* for appellant. — 1. To say the least, the equity of the appellant is equal with that of the minor defendants, and this being the case the law must prevail, and the lien of the appellant is a legal one. Senter v. Lamberth, 59 Texas, 259; Briscoe v. Bronaugh, 1 Texas, 333; McKelvain v. Allen, 58 Texas, 383; Joiner v. Perkins, 59 Texas, 300.

2. The rule here invoked is that the vendor's lien is a creature of the law; that the same is both a legal and equitable lien, and as such would have priority over a mere equitable right, even though appellant knew that the money of appellees had been invested in the land, and also that

the lien of appellant was prior in point of time.   1 Story Eq. Jur., 5 ed., secs. 64–64c; 1 Pome. Eq. Jur., secs. 413–17, note 2; 6 Enc. of Law, pp. 709, 710.

*Chambers & Doak,* for appellees.—1.   There was no error in the court overruling appellant's general demurrer.   Rev. Stats., arts. 2560, 2563; House v. Brent, 69 Texas, 27; 1 Dan. on Neg. Inst., secs. 271, 795a, 795b, 789, 789a, 799, 806; Kempner v. Wallis, 2 Ct. App. C. C., secs. 584–611; Boisseau v. Boisseau, 79 Va., 73.

2.   There never was, either by contract or otherwise, a vendor's lien created as against the minor defendants; and their funds, if illegally converted by their guardian and the grantor, to appellant's knowledge, must be first restored with interest.   Boisseau v. Boisseau, 79 Va., 73.

ACKER, PRESIDING JUDGE.—Mary M. Marshall was guardian for her minor children, five in number, for each of whom she held the sum of one hundred and twenty-five dollars.   On the 8th day of December, 1885, J. T. Cox conveyed a tract of land to Mary M. Marshall, E. P. Marshall, and "Mary M. Marshall, as guardian," for the consideration of eight hundred dollars cash, which included the money belonging to the minors, and two notes for three hundred and fifty dollars each, signed "Mary M. Marshall, E. P. Marshall, and Mary M. Marshall, guardian," reciting that they were given for the purchase money of the land, and retaining the vendor's lien.   The vendor Cox knew that the guardian was using the minors' money in purchasing the land.   There was no order of court authorizing the guardian to invest the money of her wards in the land.

After the maturity of one of the notes appellant John W. Hurt advanced to the payee Cox three hundred and eighteen dollars, and took both notes as collateral security.   After the maturity of the other note he purchased both of them, and brought this suit for the amount due by both notes, and to foreclose the vendor's lien on the land.

The minor defendants answered specially that their money to the amount of $125 each had been invested by their guardian, without authority, in the land against which plaintiff sought to foreclose the vendor's lien, and asking that the land be first subjected to the payment of their money, with interest, and alleged that both Cox and plaintiff knew that their money had been invested in the land without authority.

Plaintiff filed a general demurrer to this answer, which was overruled. Mary M. Marshall having died, judgment was rendered against E. P. Marshall for the amount due on the notes, foreclosing the vendor's lien on the land, directing that the land be sold and the proceeds of sale applied, first, to the payment of the minor's money that had been invested in it, with interest from the date of the investment, and next to payment of plaintiff's judgment.

The first assignment of error is: "The court erred in overruling appellant's general demurrer to the answer of the minor defendants."

Before a guardian can invest the money of the ward in real estate he must file an application in writing to the court where the guardianship is pending, asking for an order authorizing him to do so, of which the same notice must be given as of an application to sell the land belonging to the ward. After notice the application must be acted on at a regular term of the court, and if the court be satisfied that the investment will be beneficial to the ward, an order authorizing the same to be made must be entered upon the minutes. After the order is so entered and the contract has been made by the guardian, he must report it in writing to the court at the next regular term after it is made, when the court must inquire fully into the same, and if satisfied that the investment will benefit the estate of the ward, the court may approve the contract and authorize the guardian to pay over the money in compliance with it. Rev. Stats., arts. 2560 to 2563, inclusive. The last article cited concludes as follows: "But no money shall be paid out by the guardian on any such contract until such contract has been approved by the court by an order to that effect entered upon the minutes of the court."

The investment of the minors' money by the guardian was not only without authority but in direct violation of law, and the minor defendants were in no way bound thereby.

It appears that Cox knew at the time he received the money that it belonged to the minors, and that the guardian had no authority from the court to invest it. Such transactions being positively prohibited by the statute, it follows that the guardian was guilty of a palpable breach of trust in investing the money of her wards in the land, and as the vendor knew that it was the money of the minors that he was receiving from the guardian, he is equally liable with the guardian for the breach of trust, and could not be heard to insist that he would be entitled to have his lien enforced against the land as a superior claim to that of the minor defendants for their money which he had received from the guardian in violation of law. Boisseau v. Boisseau, 79 Va., 74.

The notes recited that they were given for the purchase money of the land conveyed to the guardian as such, jointly with others, and was signed Mary M. Marshall, "guardian." The plaintiff testified that he had no actual notice of the minors' interest when he acquired the notes, "but saw how the notes were signed."

In Daniels' work on Negotiable Instruments, volume 1, section 789, it is said: "The holder must acquire the instrument without notice of fraud, defect of title, illegality of consideration, or other fact which impeaches its validity in his transferer's hands; and the word notice in this connection signifies the same as knowledge. Knowledge of fraud or illegality impeaches the *bona fides* of the holder, or at least destroys the

superiority of his title and leaves him in the shoes of the transferrer." Again, section 789a: * * * "Actual notice of the defect is not required when the evidence of the infirmity consists of matters apparent on the face of the instrument."

Again, the same author says, section 795a: "Express notice is not indispensable. There may be evidence of the infirmity in the paper apparent on its face, or such indications as to put the purchaser upon inquiry. And in such cases constructive notice is held sufficient, upon the ground that when a party is about to perform an act which he has reason to believe may affect the rights of third persons, an inquiry as to the facts is a moral duty, and diligence an act of justice."

We think the recitation in the notes that they were given for the purchase money of the land conveyed to the guardian, and the signature of the guardian as such, were sufficient to put the plaintiff upon inquiry, by which he would have discovered the illegality of the transaction in so far as the minors were concerned, and his rights are not superior to his transferrer, Cox.

We think the answer of the minor defendants set up a good defense to the action, in so far as their rights were sought to be affected, and that the court did not err in overruling the plaintiff's general demurrer thereto.

What we have said disposes of the other assignments, except the fifth, under which it is contended that Cox, the payee of the notes sued on, being dead, his heirs and personal representatives should have been made parties.

If there were proper parties not before the court it was plaintiff's duty to have brought them in by proper process, and having failed to do so, we do not think he should be heard to complain of his own neglect.

We are of opinion that the judgment of the District Court is correct, and should be affirmed.

*Affirmed.*

Adopted December 17, 1889.