ARKANSAS FERTILIZER CO. v. CITY NAT. BANK.

(Court of Civil Appeals of Texas. Texarkana. March 10, 1910. On Motion for Rehearing, April 20, 1911. On Correction of Judgment, April 27, 1911.)

1. NEW TRIAL (§ 164*) — SETTING ASIDE — FINDINGS IN PART.

While the trial judge may on motion set aside the jury's findings as a whole, and grant a new trial, he cannot set aside part of them, substitute his own for those set aside, and thereupon render judgment.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 164.*]

2. BANKS AND BANKING (§ 159*)—DEPOSITS FOR COLLECTION—TITLE OF THIRD PERSON.

Notes having been deposited by O. with defendant bank for collection only, and as the property of plaintiff, it became entitled to demand and receive them and their proceeds, and therefore, delivery being refused without lawful excuse, to recover for their conversion, and this without regard to whether under a prior contract between plaintiff and O. the notes belonged to plaintiff, or whether thereunder a mere indebtedness of O. to plaintiff arose, to satisfy which he made the deposit; and this even if the transaction between plaintiff and O., out of which the indebtedness originated, was unlawful.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 547–553; Dec. Dig. § 159.*]

3. APPEAL AND ERROR (§ 1175*)—REVERSING AND RENDERING JUDGMENT.

The court on reversing judgment for defendant, and rendering judgment for plaintiff, can, as the trial court could have done, render judgment for only the amount of damages sued for, though the evidence showed damages in a greater sum.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4586; Dec. Dig. § 1175.*]

Appeal from Bowie County Court; Joe Hughes, Judge.

Action by the Arkansas Fertilizer Company against the City National Bank. Judgment for defendant. Plaintiff appeals. Reversed and rendered.

See, also, 135 S. W. 529.

Appellant, the plaintiff below, alleged that, by the terms of a contract attached as an exhibit to and made a part of its petition, one Owen, doing business under the name of Texarkana Grain Company, became its agent for the sale of fertilizers in Texarkana and its vicinity on the Arkansas side; that thereafterwards it delivered to Owen to sell as its agent fertilizers aggregating in value $1,554.62; that as its agent Owen sold same, receiving as payment therefor promissory notes of purchasers thereof, aggregating the sum of about $1,200; that the notes so received by Owen belonged to it, and were by Owen placed with appellee for collection by the latter; that thereafterwards, on being informed that Owen had pledged said notes to appellee as collateral security for debts he owed to appellee, it notified appellee that said notes belonged to it; and that thereafterwards appellee converted said notes to its own use and benefit by crediting same on said Owen's indebtedness to it. Appellant further alleged that it did not know the amount of each of the several notes nor the names of the parties who made same, and prayed that appellee be required to disclose the number, dates, and amounts of the several notes, and the names of the parties who executed them. Appellant further alleged that, after said notes had been placed with appellee for collection, it offered to pay to appellee the amount of Owen's indebtedness to it at the time he placed said notes with it and at the time appellee became

aware of the fact that the notes belonged to it, appellant. Besides praying for a disclosure as specified above, appellant prayed for a judgment for its damages, alleged to be $1,000, and for general relief. Appellee answered by a general denial and specially that Owen, under the name of the Texarkana Grain Company, was engaged in business in the city of Texarkana, and as one of its customers kept an account with it and became indebted to it; that the notes in question before their maturity were by said Owen placed with it as collateral security for his indebtedness to it, and to secure advances it might thereafterwards make to him; that it received said notes as such collateral security in good faith, for value, and without notice of any adverse claims thereto; that it thereafterwards collected on account of said notes sums aggregating $898.50, which it applied as payments on Owen's indebtedness to it; that it was unable to collect certain of said notes, and, after Owen's indebtedness to it had been paid, had offered to turn same over to appellant, and was still willing to turn same over to it. Appellee attached to its answer a list and description of the notes it had not collected, aggregating the sum of $475.33, which it tendered to appellant. The verdict of the jury was a special one in answer to questions to them as follows: "(1) Were the notes placed in the City National Bank as the property of the Arkansas Fertilizer Company and placed there for collection only? (2) Were the notes placed in said bank as collateral security for the Texarkana Grain Company? (3) Were the notes placed in said bank as collateral security for the total indebtedness of said grain company to said bank? (4) Were the notes placed in said bank as collateral security for the overdraft of the grain company due said bank?" The answer of the jury to the first question was "Yes." Their answers to the other questions were "No." The court overruled appellant's motion to enter a judgment in its favor on the findings of the jury, and granted appellee's motion to render one in its favor, on the ground that, "under the undisputed facts and the law," appellant was not entitled to relief as against appellee. Accordingly a judgment was rendered that appellant take nothing by its suit, and that appellee recover the costs of the suit. Afterwards, at the instance of appellant, the court, "adopting," as he recites, "the findings of the jury that the notes involved in this suit were placed with the defendant for collection," found and reduced to writing as further facts established by the evidence the following: That appellant and Owen entered into a contract by the terms of which appellant gave to Owen the exclusive right to sell its fertilizers in and near Texarkana on the Arkansas side of the state line, and Owen on his part undertook not to sell in said territory any other fertilizers, to receive and pay transportation charges on all fertilizers ship-

ped to him under the contract, to store and keep same in a dry place until sold or settled for by him, and to not sell or offer to sell such fertilizers in the territory of any other person selling the same brand of fertilizers, and in which contract it was stipulated that the fertilizers shipped to Owen, and the proceeds of sales thereof made by him should be the property of appellant until a full settlement therefor had been made by him; that settlement therefor should be made May 1st on spring shipments and November 1st on fall shipments in cash or 8 per cent. interest-bearing notes, secured in every instance by an equal sum in farmers' notes indorsed by Owen as collateral, unsold fertilizers in Owen's possession at such times to be settled for by him by notes without interest due at the next settlement day; that said contract was never registered as a chattel mortgage; that, under the terms of said contract, Owen handled the fertilizers, and, on account of sales thereof, acquired from purchasers, in payment therefor, their promissory notes aggregating about the sum of $1,400, which he turned over to the appellee during the first part of May, 1905; that the notes were not then due, but began to mature in June, 1905; that Owen at the time he turned the notes over to appellee did his banking business with and had an account with appellee, and became largely indebted to appellee on an overdraft and notes made by him to appellee; that none of his indebtedness to appellee accrued after May 27, 1905; that, on account of the notes so placed with it, appellee collected the sum of $898.50 and credited same on the indebtedness due to it by Owen; that appellee had no notice of appellant's claim of right in or to the notes until July 6, 1905, when appellant demanded same; that on the last Saturday in June, 1905, appellant and Owen had an accounting between themselves, when it was ascertained that Owen was due appellant on account of fertilizers sold by him a little less than the sum of $1,200; that Owen then executed and delivered to appellant his note for the sum found to be due it from him; that on July 5, 1905, and afterwards, Owen was insolvent; and that appellee treated the notes turned over to it by Owen as his property until his indebtedness to it had been paid, presumably by proceeds of notes collected, when it offered to deliver to appellant the notes remaining unpaid. The trial court further found as "conclusions of law" that the reservation of title in the contract between appellant and Owen to the fertilizers had the effect to make said contract a chattel mortgage, and that it was void as to appellee because never registered, but that such reservation of title ceased to have any force after the settlement made between appellant and Owen on the last Saturday in June, 1905; that the effect of the stipulations in the contract was not to give appellant title to or right of possession of the notes, but that

said notes belonged to Owen; and that said contract between appellant and Owen was in violation of the anti-trust laws of Texas, and therefore void.

There is no statement of facts with the record on this appeal.

T. E. Webber and Smelser & Vaughan, for appellant. Glass, Estes, King & Burford, for appellee.

WILLSON, J. (after stating the facts as above). [1] If the trial judge, when he singled out and adopted as his own the finding of the jury that the notes were placed with appellee for collection, intended to be understood as thereby setting aside the other findings of the jury, he assumed a power he did not possess. Had he been requested to do so by a proper motion filed, he might have set aside the findings as a whole and granted a new trial. But he was without power, on motion or otherwise, to set aside the findings in part, substitute findings of his own for those set aside, and thereupon render a judgment. Sayles' Stat. 1897, art. 1332; Casey-Swasey Co. v. Manchester Fire Assur. Co., 32 Tex. Civ. App. 158, 73 S. W. 865; Scott v. Farmers' & Merchants' National Bank, 66 S. W. 493.

[2] If the trial judge intended by his judgment to give effect to all the material findings of the jury, it is clear, we think, that he did not succeed in his effort to do so, and therefore that his judgment is erroneous, unless it should be said that the contract between appellant and Owen was void, because in violation of the anti-trust statutes, and that, because it was void, appellant was not entitled to the relief it sought. We do not think it is necessary in disposing of this appeal to determine whether the contract as between the parties to it was void or not. It may be conceded that it was, yet the question as to appellant's right to recover as sought by its suit would be left unaffected by such concession. Whether the contract between Owen and appellant was one of sale or agency, and whether it was void or not as between them, the fact remains, as found by the jury, that the notes were deposited by Owen with appellee for collection only and as the property of appellant. If the contract was one of sale and the notes belonged to Owen, he had a right to make such lawful disposition of them as he chose to make. It was not unlawful for him to use them in paying an indebtedness he acknowledged to appellant, notwithstanding that indebtedness may have originated in an unlawful transaction between them. If the contract was one of agency, the notes belonged to appellant, and certainly it was not unlawful for Owen to render to it its own. So, we think, when the notes were deposited with appellee as the property of appellant, the latter became entitled to demand and receive same and the proceeds thereof, and, if

appellee without lawful excuse for doing so refused, when demand therefor was made by appellant, to deliver same to it, appellee became guilty of a conversion thereof. Did appellee have a lawful excuse for refusing to deliver the notes uncollected and the proceeds of notes collected to appellant when it demanded same July 6, 1905? The jury found that the notes were not placed with appellee to secure any indebtedness due to it from Owen. That finding being accepted, as it must be, as truly stating a fact, upon what theory consistent therewith and with the other fact found by the jury, and referable to the pleadings and to facts found by the court, can it be urged that appellee had a right to refuse a compliance with appellant's demand? We think there is none. Appellee did not plead that it had made advances to Owen after the notes were placed with it and before it had notice of appellant's claim, relying upon the ownership of the notes being in Owen; and presumably such was not the fact. Without such pleading, the finding of the court that Owen did his banking business with it, and had become indebted to it, and that it did not know until July 6, 1905, that appellant claimed to own the notes, cannot be given any effect; and, had appellant so pleaded, that finding would have fallen short of furnishing a support for the judgment rendered. For the finding was consistent with the fact that Owen's indebtedness to appellee might all have accrued before the time when the notes were deposited with it. The notes being the property of appellant as between it and Owen we think it is clear that if appellee did not make advances to Owen, as it appears it did not, relying and having a right to rely upon the notes being his property, it was not in a position to assert as against appellant a lien upon or a right to the possession of the notes.

On the case as made by the pleadings and the findings of the jury and the court forming a part of the record, appellant was entitled to a judgment against appellee for at least the sum of $898.50. The judgment therefore will be reversed; and, appellant in its brief having requested it and so waived its right to a recovery of a greater sum, judgment will be here rendered in its favor against appellee for said sum of $898.50, interest thereupon from the 6th day of July, 1905, at the rate of 6 per cent. per annum, and the costs of this court and of the court below.

### On Motion for Rehearing.

The action of this court in reversing the judgment of the court below and here rendering a judgment in favor of appellant is attacked as erroneous on quite a number of grounds set out in the motion. Being of the opinion that the motion should be overruled, unless either the contention made that the county court was without jurisdiction of

the cause, or that we were without right, in rendering a judgment, to look to the finding of that court to determine the amount collected by appellee on account of the notes, should be sustained, and having some doubt as to whether either of these contentions should be sustained or not, we certified questions covering them to the Supreme Court. That court having answered in an opinion delivered March 22, 1911, that we had such a right and that the county court had jurisdiction of the cause (135 S. W. 529), we now overrule the motion.

### On Correction of Judgment.

[3] The sum appellant sought by its suit to recover as damages for the conversion of the notes was $1,000. The fact that it may have appeared from the testimony heard that appellant's damages amounted to a sum in excess of the sum sued for would not have authorized the county court to render a judgment in appellant's favor for a greater sum than that sued for. In reversing the judgment rendered by the county court, this court was without authority to render a judgment in appellant's favor for a greater sum than the county court could have adjudged in its favor. But we undertook, it seems, to do so. The judgment rendered here was in appellant's favor for the sum of $898.50 and interest thereon at the rate of 6 per cent. per annum from July 6, 1905—the date the conversion occurred. Calculation shows that interest at that rate to October 29, 1909, the date of the trial in the county court, would amount to the sum of $232.14. This sum added to the $898.50 would make an aggregate of $1,130.64, or a sum $130.64 in excess of the sum for which the county court could have rendered judgment. By the terms of the judgment rendered here, this excess was adjudged to appellant, when it could not have been adjudged to it by the court below. The judgment rendered here therefore is erroneous. To correct it the order heretofore made overruling appellee's motion for a rehearing will be set aside, and the motion will be granted. The judgment of this court will then be so reformed as to adjudge a recovery in favor of appellant against appellee of the sum of $1,000 and interest thereon from its date at the rate of 6 per cent. per annum, instead of a recovery of the sum of $898.50 and 6 per cent. interest thereon from July 6, 1905.