ESSEX et al. v. MITCHELL et al.*
(No. 8236.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 11, 1915. On Motion for Rehearing Feb. 5, 1916.)

1. APPEAL AND ERROR ⬤═209—RESERVATION OF GROUNDS OF REVIEW—ATTACK ON FINDINGS.

Where appellants did not attack the special findings of the jury constituting the verdict, the Court of Appeals is precluded from considering the sufficiency of the evidence to support the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1298, 1300, 1303; Dec. Dig. ⬤═209.]

2. HOMESTEAD ⬤═129 — VENDOR'S LIEN — INNOCENT PURCHASER OF NOTE—NOTICE.

Where the officers of a home association, though without actual knowledge, when buying a vendor's lien note were advised of facts putting a reasonably prudent person on notice and causing him to prosecute further inquiry, which would have disclosed that the deed executed by a wife and her husband, to the wife's homestead, occupied by her as such, was at most intended by the wife as a mortgage and not as a conveyance, the execution of the deed and note having been brought about by the fraud of the husband and the grantee, the association was chargeable with constructive notice.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 283, 468–470; Dec. Dig. ⬤═129.]

3. HOMESTEAD ⬤═133—DEED AND VENDOR'S LIEN NOTE—RIGHT OF ACTION.

Where a husband and a third party fraudulently induced the wife to deed to the third party her homestead, the wife believing that the transaction constituted a mortgage, she could have, against a purchaser of a vendor's lien note from the third party with knowledge of the facts, cancellation of the note and deed, irrespective of her return of the consideration paid her by the third party.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 487–494; Dec. Dig. ⬤═133.]

4. HOMESTEAD ⬤═129—INNOCENT PURCHASER FOR VALUE.

Where a wife, laboring under excitement and agitation, executed a deed of her homestead either under her husband's coercion or the inducement of the misrepresentations of the grantee, who gave a check for the conveyance, which the wife never cashed, and which she tendered in court in her suit for cancellation, the grantee was not an innocent purchaser for value without notice.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 283, 468–470; Dec. Dig. ⬤═129.]

5. HOMESTEAD ⬤═131 — DEED — VOIDABLE CHARACTER—COERCION.

A deed to her homestead, signed by a wife under the coercion of her husband, is voidable so far as the avoidance touches the rights of a

third person not an innocent purchaser for value.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 426, 471–483; Dec. Dig. ⊕⧴131.]

6. ACKNOWLEDGMENT ⊕⧴55 — ACKNOWLEDG-MENT OF WIFE—ATTACK.

For a married woman to successfully urge the falsity of the recitations of her privy acknowledgment of a deed in due form, she must show that she never appeared before the notary and signed and acknowledged the deed, or that the person whose rights depend upon sustaining the acknowledgment had actual or constructive knowledge of the falsity of the notarial certificate 'and was not an innocent purchaser for value.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 290–300, 303–314; Dec. Dig. ⊕⧴55.]

7. VENDOR AND PURCHASER ⊕⧴236 — "PUR-CHASER FOR VALUE."

The assumption of debts owing to the judgment creditors of a vendor of land in such a manner that they thereupon release the vendor is a payment rendering the person making it a bona fide "purchaser for value."

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 570; Dec. Dig. ⊕⧴ 236.

For other definitions, see Words and Phrases, First and Second Series, Purchaser for Value.]

8. VENDOR AND PURCHASER ⊕⧴236 — PUR-CHASER FOR VALUE.

The assumption of a vendor's lien note on land conveyed constitutes a sufficient consideration to entitle the innocent purchaser without notice to protection to the extent to which he obligates himself.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 570; Dec. Dig. ⊕⧴ 236.]

9. HUSBAND AND WIFE ⊕⧴74—DEEDS—DE-FENSES—PURCHASER FOR VALUE.

Only an innocent purchaser, who actually paid a valuable consideration and received or was entitled to receive, a conveyance, having no notice of any fraud, can defend a wife's suit for cancellation of her deed to the purchaser's grantor, based upon fraud practiced in securing her acknowledgment.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 309–312; Dec. Dig. ⊕⧴74.]

10. VENDOR AND PURCHASER ⊕⧴236—INNO-CENT PURCHASER FOR VALUE—ASSUMPTION OF VENDOR'S LIEN NOTE—CANCELLATION.

The judgment in a wife's suit for cancellation of her deed, based upon fraud practiced in securing her acknowledgment, which canceled the deed and her vendor's lien note, relieved her grantee's vendee, who had assumed such note, from his liability under the assumption, so that he could not rely on it to render him an innocent purchaser for value against whom the wife could not rescind.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 570; Dec. Dig. ⊕⧴ 236.]

On Motion for Rehearing.

11. TRIAL ⊕⧴374 — DISREGARD OF SPECIAL FINDINGS—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1990, providing that in all cases where a special verdict of the jury is rendered or the conclusions of facts found by the court are separately stated, the court shall, unless the same be set aside and a new trial granted, render judgment thereon, a trial court cannot disregard the findings of the jury upon special issues involving material facts, being under obligation to set aside findings unsustained by the evidence and grant a new trial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 884; Dec. Dig. ⊕⧴374.]

12. APPEAL AND ERROR ⊕⧴209—RESERVATION OF GROUNDS OF REVIEW—MOTION FOR PER-EMPTORY INSTRUCTIONS.

When a special verdict is returned, and no attack is made thereon, a motion for peremptory instructions cannot be held to challenge the sufficiency of the evidence to support the verdict and judgment so as to require the Court of Appeals to examine the statement of facts in detail to determine the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1298, 1300, 1303; Dec. Dig. ⊕⧴209.]

13. TRIAL ⊕⧴374 — SPECIAL VERDICT — CON-CLUSIVENESS—STATUTE.

By direct provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1986, a special verdict is conclusive, as between the parties, as to the facts found.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 884; Dec. Dig. ⊕⧴374.]

Buck, J., dissenting.

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by Mrs. Josie Belle Dykes, who married J. E. Mitchell pending suit, and others against W. S. Essex, the Mutual Home Association, and others. From a judgment for plaintiffs, the named defendants appeal. Affirmed.

W. S. Essex and Lattimore, Cummings, Doyle & Bouldin, all of Ft. Worth, for appellants. Odell & Turner and Homer L. Baughman, all of Ft. Worth, for appellees.

BUCK, J. Josie Belle Dykes sued the Mutual Home Association and W. S. Essex and her former husband, Geo. W. Dykes, and one Henry Yeager. It appears that subsequent to the filing of the suit Mrs. Dykes intermarried with J. E. Mitchell, and the appeal bond is made payable to her and her husband in the name of Mitchell; but, as she is referred to throughout the statement of facts and the pleadings as Mrs. Josie Belle Dykes, we likewise in this opinion will so designate her. Briefly stated, her claim was that she had money when she married Dykes and, after her marriage, with part of it she bought lot 10, block 16, Union Depot addition to the city of Ft. Worth, Tex., thereafter occupying the premises with her husband as a homestead; that her said husband and Yeager conspired together and induced her to execute a deed to Yeager to said homestead, reciting the cash consideration of $1,600 and the execution of a vendor's lien note for $800, but that no consideration was in fact paid except the said note that:

"At the time she signed said deed she was informed and believed that the said deed was in effect a mortgage; that she received no part of the proceeds of said note."

The deed was of date January 25, 1912. She claimed that said Dykes and Yeager and appellants caused the said note to be trans-

ferred to appellant Mutual Home Association, thereby attempting to fix a lien on her homestead—

"it being well known to all said parties that such property was her homestead and her separate property."

She further claimed that about the due date of the note, February, 1913, appellant Essex made her believe that her home was about to be sold, and that she would be deprived of it unless she and her husband would execute a deed to him, and she would accept an additional $350; that, "while laboring under great excitement, agitation, etc., and not knowing or realizing what she was doing, or the effect thereof, except as the facts had been represented to her by Essex, she signed a paper which she now understands was a deed, and Essex gave her a check for $350, which she has not cashed," and which she tendered in court. She prayed for a cancellation of the deed from herself and husband to Yeager and of the note secured therein, and of the deed of herself and husband to Essex, and, in the alternative, for $3,500 damages. Appellant Mutual Home Association denied any conspiracy of any kind, averred the regularity of the deeds and acknowledgments, its perfect good faith in the acquisition of the note in the due course of business; its payment of the $800 to Geo. W. Dykes, without knowledge of any fraud or irregularity, for the note before maturity; that having agreed with her husband and Yeager to execute an instrument against said property for the purpose of inducing some one, and especially appellant Mutual Home Association, to believe that the sale was valid the appellee Josie Belle Dykes was estopped from denying the validity of said deed and the note executed thereunder; that by the joining of appellee with her husband in the execution of said deed, regular on its face, and reciting a note on which she expected them to get money, appellant Mutual Home Association was an innocent purchaser. It was further pleaded that appellee Josie Belle Dykes, with her former husband and Yeager, conspired to defraud some one, and especially this appellant, in the whole transaction. Appellant Essex pleaded that at the time of the execution of the deed by Mrs. Dykes and husband to him, said note for $800 was past due, and that Mrs. Dykes claimed that she had received part of the $800, and that she had paid more than the $800 for the place, and that she agreed to deed the place to Essex for an additional $350; that she did so make the deed, and he gave her his check for that amount and assumed the indebtedness to the Mutual Home Association. The Mutual Home Association asked for judgment for their debt and foreclosure, and defendant Essex prayed that his title be quieted. The cause was dismissed as to defendant Yeager, not served. The case was tried before a jury on special issues, the court submitting all the issues asked by each side. Both sides filed motions for judgment. Appellee's motion was granted, and judgment entered, canceling both deeds, the note, and the check. Appellants' motion was overruled. The Mutual Home Association and W. S. Essex appeal.

[1] The special issues submitted were numerous and, in many instances, as we view it, did not submit the issues of fact involved, but rather the evidence by which said issues might be established. We will not attempt, therefore, to give in full the verdict of the jury upon said special issues, but only the issues and answers thereto which seem essential to determine whether or not error was committed by the court in giving judgment for plaintiff. The appellants having made no attack on the findings of the jury constituting the verdict, we are precluded from a consideration of the question of the sufficiency of the evidence to support said verdict. Weinstein v. Acme Laundry, 166 S. W. 126.

The jury found: (1) That the plaintiff Josie Belle Dykes did not know, at the time she signed the deed from her and her husband to Yeager, that she was signing a deed or an instrument of any kind that affected in any way the lot in issue, or that she conveyed the title thereto, or her interest therein. (2) She did know that the man Swofford, who took her acknowledgment to said deed, was a notary public or officer, though said Swofford did not, nor did any else in her presence, make known to her his official capacity in which he purported to act. (3) She was made aware by Swofford, or some one else in his presence, that she was acknowledging the deed signed by her for some purpose, but she did not know or believe that she was signing and acknowledging the same for the purpose of borrowing money on the lot in issue. (4) Swofford examined her privily and apart from her husband, and explained to her, in part, but not fully, the contents of the deed, and she acknowledged the signing of the same for the purpose and consideration therein expressed. (5) She did not know or believe, or have reason to believe, that her act in signing said deed would cause any one to believe that she was conveying, pledging, or in any manner offering said lot as security for a loan of money. (6) At the time of the purchase of the note from Yeager to Dykes by the Mutual Home Association, said association, through its officers or representatives, had knowledge of sufficient facts to have put a reasonably prudent person on inquiry as to the real transaction between Geo. W. Dykes and Yeager, resulting in the making of the deed by Dykes and wife to Yeager, and by reasonable inquiry said officers and representatives of said association would have discovered the real facts in the case. (7) Yeager and Geo. W. Dykes conspired to-

gether to secure the signing of the deed by plaintiff to Yeager, and concealed from plaintiff the real nature of the transaction and the fact that she was deeding the lot or incumbering it for money. (8) Plaintiff did not know or believe, or have reason to know or believe, at the time she signed said deed that she was signing a paper or instrument that might cause some one to believe that she was conveying, pledging, incumbering, or in any way offering said lot as security for a loan of money. (9) At the time plaintiff signed the deed to Essex she was coerced and threatened by her husband, or was caused to sign the same by statements and declarations of W. S. Essex, made in a manner and under such circumstances as to influence her in doing a thing that she would otherwise not have done, and at said time she was laboring under a state of agitation and excitement such as to render her act an involuntary one.

[2] In this state of the record, and in view of the fact that plaintiff below alleged "that she has continued to reside upon said lot, claiming it as her homestead and occupying it as such from the time she moved thereon up to this time," which plea is supported by the evidence, we are constrained to hold that the findings hereinabove set forth are sufficient to sustain appellee's contention that said Mutual Home Association had constructive notice at least of the real facts claimed to have existed with reference to the execution of the instrument of conveyance from Mrs. Dykes and husband to Yeager, and, having such constructive notice, said association is charged with a knowledge of all the facts which in truth existed, and as found by the jury did exist.

It is true that in answer to special issues submitted by the defendants, the jury found: (a) That at the time of the purchase of the $800 vendor's lien note, neither the Mutual Home Association, nor any of its officers, knew that the plaintiff was claiming the property in question as her homestead, or that the said writing or instrument was intended as a mortgage, and was not in fact a bona fide sale; (b) that said association and its officers believed at said time that said instrument was a bona fide deed and represented a bona fide sale, and that it paid to Geo. W. Dykes a valuable consideration for said note. But even though said association and its officers had no actual knowledge, if they were advised of facts or circumstances which would have put a reasonably prudent person on notice and caused him to prosecute inquiry further, and if by so doing he would have discovered that in fact said instrument of conveyance was at most intended by the plaintiff as a mortgage, and not as an absolute deed of conveyance, and that the lot sought to be conveyed was her homestead and occupied by her as such at the time of the conveyance, and at the time of the purchase by said association of the note in question,

then it would become immaterial whether or not there was any actual notice on the part of the officers of the association of such facts.

[3] Therefore, as to this branch of the case we are forced to conclude that the court below committed no error in entering judgment for the plaintiff canceling the deed of conveyance and the vendor's lien note. Hadock Bros. v. Hill, 75 Tex. 193, 12 S. W. 974; Hurst v. Marshall, 75 Tex. 452, 13 S. W. 33; Lumpkin v. Adams, 74 Tex. 96, 11 S. W. 1070; Howard v. Kopperl, 74 Tex. 494, 5 S. W. 627; Berry v. Donley, 26 Tex. 737; Moores v. Linney, 2 Tex. Civ. App. 293, 21 S. W. 709; Speer on Law of Married Women, § 72, p. 72. Nor would the plaintiff, as a condition of the right of recission, be required to return the consideration paid.

[4-10] As to the other branch of the case between appellant Essex and appellee: Since the jury found that in executing the deed to Essex plaintiff was laboring under excitement and agitation, and that she was coerced and threatened by her husband, or was induced to do so by statements and representations made by Essex, and the further fact that the check given by Essex to plaintiff was never cashed and was tendered by plaintiff in court, we do not think that Essex is in the attitude of an innocent purchaser without notice for value. While the answer to the issue submitted as to whether or not the execution of the deed by plaintiff, joined by her husband, to Essex was voluntary or involuntary leaves it uncertain as to whether the finding of the jury to the effect that said act was an involuntary one was based upon the alleged coercion by the husband, or upon the alleged representations of Essex, yet it would be immaterial, in so far as it affected plaintiff's right of rescission, unless Essex was an innocent purchaser for value. If, in fact, plaintiff was induced to sign said deed by reason of threats and coercion of her husband, said deed would be voidable at least in so far as its avoidance affected the rights of any person not an innocent purchaser for a valuable consideration. In order for a married woman to successfully urge the falsity of the recitations of a privy acknowledgment, when such acknowledgment is in due form, she must show, either she never appeared before the notary at all and signed and acknowledged the instrument, or that the person whose rights depend upon sustaining the sufficiency of said acknowledgment had actual or constructive knowledge of the falsity of the notarial certificate and was not an innocent purchaser for value. Brand et ux. v. Colorado Salt Co. et al., 30 Tex. Civ. App. 458, 70 S. W. 578; Davis v. Kennedy, 58 Tex. 519; Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677; Webb v. Burney, 70 Tex. 325, 7 S. W. 841. These cases hold, in effect, that when a certificate of acknowledgment is in due and legal form, the validi-

ty of the deed cannot be attacked so as to affect the rights of a purchaser for value without notice of fraud inducing the execution of the deed, provided the wife did appear before the notary, sign the instrument, and have her acknowledgment taken in the form recited in such certificate of acknowledgment. It is true that it has been held that the giving of a negotiable note is as effective as the payment in cash to show a purchase for value. Watkins v. Spoull, 8 Tex. Civ. App. 427, 28 S. W. 356. Also, the assumption of the debts owing to the judgment creditors of the vendor, in such a manner that they thereupon released the vendor, is a payment which will render the person who makes it a bona fide purchaser for value. Henderson v. Pilgrim, 22 Tex. 464; Batts v. Scott, 37 Tex. 59. And for like reason the assumption of the vendor's lien notes on the land conveyed would constitute a sufficient consideration to entitle the innocent purchaser without notice to protection to the extent that he had obligated himself. 39 Cyc. 1774 et seq. and Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77. In order for the plea of innocent purchaser for value to be a complete answer in a suit for rescission based upon fraud practiced in securing the acknowledgment of the wife, such purchaser must be a complete purchaser; that is, he must have purchased for a valuable consideration, actually paid, the entire purchase money, and received, or be entitled to receive, a conveyance before notice of any fraud. If, in this case, Essex was an innocent purchaser, having no knowledge of the alleged acts of the husband constituting coercion to induce the plaintiff to execute this deed, the said Essex, having assumed the $800 note, would, in a suit between him and plaintiff, be protected to the extent of his loss by reason of such assumption. But by the same judgment that canceled the deed from plaintiff and husband to Essex the deed from the Dykes to Yeager and the vendor's lien note held by the Mutual Home Association were canceled; the liability of Essex under his assumption was thereby relieved, and we do not think that Essex could successfully rely on said assumption to show that he was an innocent purchaser for value.

If our conclusions are correct as herein set forth, the assignments of appellant attacking the judgment of the court in canceling the deed to Essex are sufficiently answered, and said assignments are therefore overruled.

Appellants have in their brief urged some 24 specifications of error. And we have carefully considered each assignment and examined the authorities cited thereunder, but we believe that in what has been said the vital questions raised by said assignment have been determined, and that all assignments should be overruled.

The judgment is affirmed.

## On Motion for Rehearing.

[11] Appellant Mutual Home Association earnestly insists that its motion for an instructed verdict adequately challenges the sufficiency of the evidence to support the verdict of the jury upon the special issues, and would require this court, in the absence of a direct attack on the findings, to consider the evidence in order to determine the question of the sufficiency of the evidence to sustain the verdict upon the question of notice to the Mutual Home Association. It is further urged that appellants' motion for judgment required the trial court to disregard the findings of the jury adverse to appellants, as being unsupported by the evidence, and to enter judgment for the defendants. A trial court cannot disregard the findings of the jury upon special issues involving material facts. He may set aside such findings when not sustained by the evidence and grant a new trial, but, under our practice, he cannot enter a judgment non obstante veredicto, when to do so will require him to disregard findings upon material issues. When a special verdict is returned, he has but two alternatives: (1) Set the verdict aside and grant a new trial; or (2) to enter a judgment upon and in accordance with the verdict. Article 1990, Vernon's Sayles' Statutes; Scott v. F. & M. Bank, 66 S. W. 485; Casey-Swasey Co. v. Fire Association Co., 32 Tex. Civ. App. 158, 73 S. W. 865.

[12, 13] The majority are of the opinion that when a special verdict is returned, and no attack is made thereon, that a motion for peremptory instructions cannot be held to so challenge the sufficiency of the evidence to support the verdict and judgment as to require this court to examine the statement of facts in detail to determine the matter. A special verdict is conclusive, as between the parties, as to the facts found. Article 1986, Vernon's Sayles' Stats.; Robertson v. Kirby, 25 Tex. Civ. App. 472, 61 S. W. 967; Arkansas Fertilizer Co. v. City Natl. Bank, 137 S. W. 1179.

Furthermore, the majority are of the opinion that the evidence in the record to the effect: (1) That Swofford, the notary, and Dykes, who was accompanied by Yeager, spoke to Arneson, the secretary of the association about the loan, prior to the making of the deed from the Dykes to Yeager; (2) that Essex, the attorney and an officer of the association, wrote the deed, the note, and the transfer of the note to the association, together with the deed of trust, all before Mrs. Dykes signed the deed; (3) that the officers of the association inspected the property, at that time occupied by plaintiff as her homestead, and knew that it was worth only $1,200, and not $2,400, as the consideration was recited in the deed, and that Mr. Furman, one of the directors of the association, who inspected the property, testified that he thought fictitious values were put in deeds,

and, presumably in this deed, to mislead future purchasers—are sufficient to sustain the finding as to notice on the part of the association that the transaction was not in fact a bona fide sale. In the opinion of the majority, the case of Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677, is in point, and supports their conclusion. In the last-cited case, the husband contracted to sell his homestead for $1,000. The wife was told by the husband that the purchaser was to pay $2,500 for the homestead, and she consented to sell at that price. A deed was prepared, reciting a consideration of $2,000. This was signed and acknowledged by the wife, and was delivered upon the payment of $1,000. The Supreme Court held that the transaction showed a fraud upon the wife, of which the purchaser had notice, and she was not bound by the deed so obtained from her.

The writer does not agree with the conclusion reached by the majority, if recourse should be had to the statement of facts that the evidence above referred to is sufficient to show notice to the defendant association; neither does he think the holding in Stallings v. Hullum rests upon a similar state of facts. He thinks the two cases are easily distinguishable upon the facts.

But in consonance with the opinion of the majority, the motion for rehearing is overruled.

BUCK, J., dissenting as noted in the conclusions.