### ADKINS–POLK CO. v. RHODES et ux.
### (No. 2200.)

Court of Civil Appeals of Texas. El Paso. Jan. 10, 1929.

Rehearing Denied Jan. 31, 1929.

P Walter Brown, of Fort Worth, for appellant.

Clay Cooke, of Fort Worth, for appellees.

WALTHALL, J. Adkins-Polk Company, a corporation, brought this suit against M. Y. Rhodes and wife on a certain promissory note, in the sum of $1,454.48, payable to the order of plaintiff, providing for the payment of interest, and attorney fees in the event suit is brought thereon. M. Y. Rhodes, at the time of making said note was in the grocery business, and the note further stipulated that, in the event M. Y. Rhodes should sell his grocery business or discontinue same, said note should become due and payable. To secure the payment of said note, Rhodes, joined by his wife, as a part of the same transaction, executed to D. C. Beddoe, as trustee, a deed of trust lien on a certain lot or tract of land in the town of Arlington, Tarrant county, the trust deed being, in form, acknowledged and recorded, its terms in the usual form of such instruments. Plaintiff asked for judgment for its debt, and foreclosure of its lien on said real estate.

Defendants answered separately, and, so far as necessary to present the one controlling issue here, they answered, in substance, as follows: M. Y. Rhodes answered by general denial; that said note had been fully paid in the manner stated, but, in view of the issues presented here, we need not further state.

Mrs. M. Y. Rhodes answered by general denial, pleaded her status as a married woman; alleged that the property upon which plaintiff seeks to foreclose its lien is her sole and separate estate inherited by her; alleged that she did not know that said note or deed of trust contained a provision that her husband was prohibited from selling his said grocery business and ceasing operating same, or in any manner using same to satisfy said indebtedness, but instead she was informed and believed that same would be utilized to pay said indebtedness; that said provisions in said deed of trust were not read or explained to her, and, had same been done, she would not have signed same; that thereafter, when her husband could and would have sold the stock of groceries, as alleged by him, and paid the greater portion of said indebtedness, and would have removed his said store and other fixtures to a better location and a better business, whereby said balance of said note could have been satisfied, plaintiff and her husband, without her knowledge or consent, agreed to continue her husband in business at the same location, and agreed not to sell said groceries and satisfy said indebtedness, as she under-

stood would be done at the time she executed said deed of trust; that thereafter, by an agreement between her husband and plaintiff, her husband made a general assignment of all of said stock of groceries, notes, accounts, and fixtures upon which plaintiff had a chattel mortgage lien, for the benefit of plaintiff and other creditors, and thereafter her husband ceased to engage in such business, and, as to said assignment, she pleaded, in effect, as did her husband.

By supplemental pleadings plaintiff pleaded more fully as to the grocery business, the property in the deed of trust and otherwise joining in issue on the matters pleaded by Mrs. Rhodes.

On issues submitted on the matters we have concluded necessarily control the disposition to be made of this appeal, the jury found:

(4) At the time Mrs. Rhodes executed the deed of trust she did not fully understand the nature and contents of the instrument.

(5) The notary public, taking the acknowledgment of Mrs. Rhodes, did not explain to her the provision in said deed of trust, providing that the note secured thereby should immediately become due and payable and said deed of trust subject to foreclosure, if said M. Y. Rhodes should sell the grocery business or discontinue his grocery business.

(6) Mrs. Rhodes would not have executed said deed of trust had said term and condition therein (as in the next above issue) been fully explained to her.

On the uncontroverted evidence and the issues found, the court entered judgment for plaintiff against M. Y. Rhodes for said indebtedness, and against plaintiff as to Mrs. Rhodes, as to said indebtedness, and against plaintiff as to foreclosure of its deed of trust lien on said property, and decreed that said deed to trust be canceled and the cloud cast thereby on the title be removed, to which plaintiff excepted, filed its motion for new trial which was overruled, and to which plaintiff excepted, gave notice of, and has perfected, this appeal.

### Opinion.

The property upon which the deed of trust was given was the separate property of Mrs. Rhodes. Rhodes, prior to, and at the time of, the execution of the deed of trust was in the grocery business in Arlington, and in the conduct of that business had become indebted to appellant to the amount stated in the note, the note being executed to cover and include said pre-existing indebtedness. At the time the note and deed of trust were executed, appellant had a chattel mortgage on the grocery, a café run in connection with Rhodes' business, and the fixtures and market fixtures, consisting of an ice box, shelving, showcases, adding machine, scales, dishes, tools, and butcher shop equipment, and café equipment. The evidence tends to show the market value of the fixtures at about $2,500. Rhodes and wife testified, in effect, that Rhodes got Mrs.

Rhodes to execute the deed of trust, Rhodes saying to her that: "They wanted her to sign it giving further security on this debt besides the mortgage they already had on those fixtures, and she didn't want to sign it. She said, 'we already have that loan against it, and then give that against it, I am afraid we will lose it.' I said, 'well, they will give us 12 months to pay that note, and in the event we do not collect these accounts so we can pay it off, I will sell this grocery stock and pay that off, and I don't think you will run any risk in losing your property on account of that deed of trust.'" Rhodes testified to a deal he had to sell the grocery business, but that appellant objected and showed him the clause in the deed of trust prohibiting such sale. Said he did not know that such clause was in the deed of trust until it was then pointed out to him. Mrs. Rhodes testified that the notary, who took her acknowledgment to the deed of trust, "did not read the instrument to me. He did not explain anything about what was in the instrument. I did not read it. * * * He asked me if I understood what I was signing. * * * As well as I remember I just told him, 'Well,' I did not know whether I did or not, but I guess that I knew what it was, and I signed it. He read no part of it to me. * * * Had I known that provision was in the deed of trust I would not have signed it."

Mr. Cravens, the notary, testified: "I do not remember the particulars of the acknowledgment at all. I remember there wasn't anything irregular about it. I just went through the regular routine of asking her if she signed it willingly, and for the purposes and consideration therein expressed. That is about all I said. She said she did, and signed it."

Appellant presents a number of propositions which we have concluded we need not discuss, as we have concluded that, based on the evidence and the jury's findings, 4, 5, and 6, the court's judgment would necessarily release the property of Mrs. Rhodes from the lien under the deed of trust, regardless of what might properly be held under other propositions.

To have the effect of a conveyance of the separate lands of Mrs. Rhodes to the trustee, there must have been a proper acknowledgment by her before the officer authorized to take acknowledgment to the deed of trust. Article 1299, R. C. S., provides the manner of conveyance of the separate lands of the wife by proper acknowledgment and certificate, and without which no such conveyance shall take effect. The certificate of acknowledgment of a married woman recites, "and having the same fully explained to her," referring to the instrument she has signed, or is then signing, and, when it has been fully explained to her, she acknowledges to the officer such instrument to be her act and deed, and declares to him that she had willingly signed the instrument for the purposes and consid

eration expressed in the instrument, and did not wish to retract it. R. C. S. art. 6608. The whole form of acknowledgment clearly shows that, before the instrument conveying her property to another can be her act and deed, the contents of the instrument must be fully explained to her by the officer, otherwise the instrument is not her act and deed, and she would not be estopped from denying that it is, unless, as said in Johnson v. Bryan, 62 Tex. on page 626, she should be guilty of some positive fraud, or else of some act of concealment or suppression which in law would be equal thereto, of which there is no suggestion in this case.

The necessity, that the contents of the deed of trust should have been fully explained to Mrs. Rhodes, as provided by the statute, seems peculiarly fitting under the facts of this case. She had agreed to the execution of the instrument reluctantly, and with the understanding that the grocery business could and would be disposed of if necessary before resort would be had to the foreclosure of the deed of trust. The deed of trust, by its terms, forbid a disposition of the grocery business, of which provision she did not know, and would not have signed, had she known. Had the deed of trust been "fully explained to her," she would have been charged with the knowledge of its provisions.

■ The acknowledgment required by the law is essential to the conveyance by a married woman of her separate real estate. Norton v. Davis, 83 Tex. 32, 18 S. W. 430; Kopke v. Votaw (Tex. Civ. App.) 95 S. W. 15 (writ refused); Speer's Laws of Marital Rights, § 210, p. 295, in which it is said that a deed not acknowledged by the wife, in the manner required by law, passes no title whatever, either legal or equitable. Berry v. Donley, 26 Tex. 737; Rhine v. Hodge, 1 Tex. Civ. App. 368, 21 S. W. 140; Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65; Black v. Garner (Tex. Civ. App.) 63 S. W. 918; Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 399.

The matter of the acknowledgment to the deed of trust, not affected by any other issue, would necessarily release the lien on the land, and require the judgment rendered as to the deed of trust.

The case is affirmed.

Justice HIGGINS is disqualified, and did not participate in this decision.