Katie MEIER et al., Appellants,

v.

SUNTEX OIL & GAS COMPANY et al., Appellees.

No. 7704.

Court of Civil Appeals of Texas.

Amarillo.

April 3, 1967.

Sansing & Sansing, Higgins, Roy Sansing, Higgins, of counsel, Ronald Kaarbo, Liberal, Kan., for appellants.

Lemon, Close & Atkinson, Perryton, Edward L. Atkinson, Perryton, Gordon Llewellyn, Dallas, of counsel, for appellees.

NORTHCUTT, Justice.

This is a summary judgment case. Katie Meier, Irene Meier, W. W. Brown and

wife, Connie E. Brown, as plaintiffs, brought this action against Suntex Oil & Gas Company, Paul M. Haywood, Lorene Haywood, John B. Stigall, Jr., as Trustee for Texas Bank & Trust Company of Dallas and Texas Bank & Trust Company of Dallas as defendants, seeking a judgment declaring a certain oil and gas lease terminated and expired under the terms of the lease. Suntex Oil & Gas Company, Paul M. Haywood and Lorene Haywood filed their answer to the plaintiffs' suit and then filed their application for summary judgment relying upon the affidavit of Paul M. Haywood, affidavit of Basil Duke, Jr., pleadings of all parties and depositions of Paul M. Haywood and W. W. Brown to sustain their motion. Plaintiffs filed their opposition of the motion for summary judgment contending defendants håd not complied with the terms of the oil and gas lease. The motion for summary judgment was sustained and ordered that the plaintiffs recover nothing of and from the defendants. From that judgment the plaintiffs perfected this appeal. The parties hereafter will be referred to herein as they were in the trial court.

 Plaintiffs present this appeal upon three points of error. By the first point it is urged that the court erred in sustaining the motion for summary judgment because all necessary and indispensable parties were not before the court. The plaintiffs brought this action against defendants seeking to terminate the oil and gas lease. The trial court refused the plaintiffs' contention and left the lease in force. Consequently, matters were left as they were before the suit was filed. No one other than the plaintiffs were contending the lease should be terminated and if there were other parties that would have been affected by the suit it was plaintiffs' duty to make them parties. Plaintiffs did not raise the issue of necessary parties in the trial court and for the first time after judgment was rendered against them present that contention in this appeal. No one's rights except the parties in this suit were affected by the

judgment entered. The only thing the plaintiffs sought to do in this case was to cancel the oil and gas lease of the defendants. It was plaintiffs' duty to bring the proper parties into court and where they failed to do so they cannot complain of their own negligence. Hurt v. Marshall, 75 Tex. 452, 13 S.W. 33 (1889); Morris v. Drescher, 123 S.W.2d 958 (Tex.Civ.App.—Waco.1938, writ ref'd) but should we be wrong in so holding and that there were other parties interested in the lease such would be harmless error because the lease is still in force and effect and their rights are in no way affected by the summary judgment. We overrule plaintiffs' first point of error.

By plaintiffs' second point of error it is contended the court erred in sustaining defendants' motion for summary judgment and entering judgment for defendants because there was a genuine issue of fact raised by the record, deposition and the affidavits offered in support of plaintiffs' opposition to defendants' motion for summary judgment. By plaintiffs' third point of error it is contended there was a genuine issue of fact raised as to whether or not defendants were in good faith in their reworking operations after December 5, 1965. We will consider both of these points together.

On October 17, 1955, Alex Meier, administrator of the estate of Ted Meier, deceased, Katie Meier, a widow, and Irene Mae Meier, a feme sole, as lessors made, executed and conveyed an oil and gas lease in favor of Paul M. Haywood as lessee for a primary period of ten years covering the northwest quarter of Section No. 1127 in Block No. 43, H. & T. C. R.R. Co. Survey containing 160 acres; the east one-half of Section No. 1162, Block No. 43, H. & T. C. R.R. Co. Survey containing 322.70 acres; and the tract of 63.51 acres out of Survey No. 159, Block 10, B. B. B. & C. Co. Survey, all in Lipscomb County, Texas, making the total of 546.21 acres in all. Haywood later farmed out the oil rights in this acreage to Suntex.

The lease, Subdivision 4, provides as follows:

"4. If operations for drilling are not commenced on said land on or before the 17th day of October, 1956, the lease shall then terminate as to both parties unless on or before such date Lessee shall pay or tender to Lessor or to the credit of Lessor in the First National Bank at Darrouzett, Texas (which bank and its successors shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or of the rentals) the sum of Five hundred forty-six and 21/100 Dollars ($546.21) (herein called rentals), which shall cover the privilege of deferring commencement of operations for drilling for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of operations for drilling may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rentals may be made by the check or draft of Lessee mailed or delivered to lessor or to said bank or its successor on or before such date."

The lease, Subdivision 5, further provides as follows:

"5. If prior to discovery of oil, gas or other mineral on said land lease should drill a dry hole or holes thereon, or if after discovery of oil, gas or other mineral all wells thereon should become incapable of producing for any cause, this lease shall not terminate if Lessee commences operations for additional drilling or for reworking within sixty (60) days thereafter or (If it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of sixty (60) days from date of completion of dry hole or cessation of production. If at the expiration of the primary term there is no well upon said land capable of producing oil, gas or other mineral, but lessee has commenced operations for drilling or reworking thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) days. * * *"

The lease, Subdivision 12, further provides:

"12. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to the heirs, executors, administrators, successors and assigns of the parties hereto. Notwithstanding any actual or constructive knowledge of or notice to Lessee, no change or division in the ownership of the lands, royalties, or rentals, however accomplished, shall be binding upon the Lessee (except at Lessee's Option in any particular case), until thirty (30) days after Lessee shall have been furnished with the original, a copy certified by the official recorder of the county where the land or some part thereof is located, or a photostat of the recorded instrument or instruments evidencing the change or transfer, including any intermediate transfer from the Lessor or his assigns not theretofore furnished to Lessee, and such change or transfer shall not affect any payments made prior to said date whether or not due. In case of death of any person entitled to receive royalties or rentals, the evidence of change in ownership shall consist of letters of administration or final decree of distribution of the estate of the decedent issued by a court of competent jurisdiction of the decedent's estate including his interest in the lands above described. Lessee may until such date continue to pay such royalties and rentals as if such change or transfer had not been made, or may pay the same according to the interests of record as disclosed by the last certification of an abstract in Lessee's possession subsequent to the date of the lease, or at Lessee's option, may suspend the payment thereof until thirty (30) days after such evidence is received. No change or division of the ownership of the land, royalties or rentals

shall operate to enlarge the obligations or diminish the rights of the lessee. No division of royalties shall be made effective except at the end of a calendar month."

All deferred rentals were paid as provided for in the lease.

The lease was continued in full force and effect between October 17, 1955, and October 17, 1962, by properly and timely payments of delay rentals. In August of 1962 Haywood commenced drilling the first well on the east half of Section 1162 and it was completed as a commercial gas well on September 5, 1962. Shut-in gas royalties or rentals were timely and properly paid for the period of October 17, 1962, to October 17, 1964. Production from this well was commenced on June 23, 1964, and continued to produce in paying quantities until about October 1, 1965. At this time salt water became so strong in the well it became necessary to rework the well in order to keep the well producing gas. We will not give the dates and exact work done thereafter but they are given in defendants' affidavit in support of their motion for summary judgment. The defendants began reworking operations on the well on October 17, 1965, and the operations were prosecuted with no cessation of more than thirty days until January 27, 1966. On January 17, 1966, Suntex Oil & Gas Company started two wells on the lease here involved, one well to be on Section 1162 and the other on the 63.51 acreage and obtained Railroad Commission approval to drill such additional wells. On February 14, 1966, Suntex commenced drilling operations on another well on Section No. 1162 and dug the rat hole and mouse hole for drilling. Immediately the plaintiffs padlocked the gate in the entrance to the location and thereby excluded Suntex from the lease premises. Plaintiffs' attorney advised defendants' attorney that suit would be filed immediately and that Suntex should not enter the premises. The defendants did not proceed further. This suit was filed on February 25, 1966.

In the plaintiffs' opposition to defendants' motion for summary judgment it is contended as one of the reasons why a summary judgment should not be granted that W. W. Brown had purchased the surface and one-half of the minerals in the 63.51 tract and had never been paid delay rentals nor any gas and oil royalties, then further alleged that the work done by defendants was not done in good faith and was only nominal or fictitious operations in an attempt to maintain the lease in force. Plaintiffs contend there are three genuine issues of fact before the court; namely, (1) Did the defendants waive their right under the oil and gas lease to have W. W. Brown present them with a certified copy of the deed by which Brown acquired title to an undivided one-half of the minerals in the 63.51 acre tract? (2) Did Paul Haywood receive a copy of the deed from Basil Duke, Jr.? and (3) Did the defendants rework the Meier No. 1 in good faith? The affidavit of Alex Meier in support of plaintiffs' opposition to the motion for summary judgment does not state anything as to W. W. Brown. The other two matters set out in the affidavit are what someone told him and his conclusions of law. The affidavit does not state any facts that would be admissible in evidence. It is stated in Chumchal v. Natural Gas Pipeline Co. of America, 381 S.W.2d 690 (Tex.Civ.App.—Corpus Christi, 1964, no writ) citing several Supreme Court opinions as follows:

"Rule 166–A provides that the supporting and opposing affidavits shall be made on personal knowledge, and shall set forth facts which would be admissible in evidence, and show affirmatively that affiant is competent to testify to the matters testified therein. Appellant's deposition shows affirmatively that any statement of hers in her affidavit or in her pleadings concerning the date or dates of appellees' alleged trespass on her property is based on hearsay, and cannot be useful to her in raising a fact issue to answer Pivonka's evidence. Box v. Bates, 162 Tex. 184, 346 S.W.2d 317; Heien v. Crabtree, Tex.

Civ.App., 364 S.W.2d 271, aff'd Supreme Court, 369 S.W.2d 28; Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396; Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, writ ref. The sworn evidence of Pivonka that the excavations on appellant's land had been completed more than two years prior to the filing of appellant's suit stands uncontradicted by any competent evidence."

See also Sparkman v. McWhirter, 263 S. W.2d 832 (Tex.Civ.App.—Dallas, 1953, writ ref'd). Consequently, we overrule plaintiffs' contention that there was an issue that the defendants did not rework the Meier No. 1 in good faith.

■ The affidavits of Haywood, Duke and Brown all show that the defendants were never delivered any deed or any other instrument showing Brown owned the 63.51 acre tract as provided for in the lease. Brown swore that Haywood saw the deed from the Meiers to him that was in escrow in the bank. Brown no way contended he had complied with Section 12 of the oil and gas lease, supra, that would entitle him to any rentals or royalties provided for in the lease. Before Brown would have any action as against the defendants he would have had to comply with the provisions of the lease. The defendants were required to pay lessors their proportionate share of delay rentals, which they did and is in no way denied. However, defendants were not bound by any transfer or assignment of interest until they had been furnished with the instruments as set out in Subdivision 12 of the lease as shown above. Benson v. Lacy, 202 S.W.2d 689 (Tex.Civ.App.—Texarkana, no writ); Gulf Refining Co. v. Shatford, 159 F.2d 231 (5th Cir., 1947).

■ Under this record it is shown that the defendants had complied with the terms of the lease and were continuing to proceed under the terms of the lease until locked out from the land covered in the lease and the filing of this suit. Brown's rights were limited to the 63.51 acre tract. He had no interest in the royalties from the gas well on Section 1162. Japhet v. McRae, 276 S. W. 669 (Tex.Comm'n App., judg. adopted, 1925); Hinds v. McCord, 45 S.W.2d 442 (Tex.Civ.App.—Austin, 1931, no writ).

■ It is stated in Atwood v. Humble Oil & Refining Company, 338 F.2d 502 at 507 (5th Cir., 1964) (certiorari denied, 381 U.S. 926, 85 S.Ct. 1562, 14 L.Ed.2d 684, rehearing denied 381 U.S. 956, 85 S.Ct. 1804, 14 L. Ed.2d 729) as follows:

"Where land leased for oil and gas is subdivided in Texas, absent agreement to the contrary, the owner of the subdivided tract is entitled to all of the royalties resulting from the production of oil and gas upon his parcel of land. He does not share in the royalties of the whole undivided tract in the proportion that the area of his land bears to the entire tract. The leading Texas case is Japhet v. McRae, 276 S.W. 669 (Tex.Comm.App.1925, judg. adopted by Tex.Sup.Ct.)."

After careful consideration we overrule all three of plaintiffs' points of error. Judgment of the trial court is affirmed.